Argued and submitted February 7, ballot title certified March 7, 1990

HAND et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent.*

(SC S36721)

788 P2d 446

Michael C. Zusman, Portland, argued the cause and filed the petition for Beulah Hand, et al. With him on the petition was Grenley, Rotenberg, Laskowski, Evans & Bragg, P.C., Portland.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the Answering Memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, C. J., Carson, Gillette, Van Hoomissen, Fadeley, and Unis, JJ.

FADELEY, J.

## FADELEY, J.

This ballot title review considers whether a title prepared for a referendum complies with the statutory requirements for such titles. The 1989 legislature adopted HB 3508. Interested citizens successfully sought a referendum vote on the measure. This review is of the ballot title which the statutes require the Attorney General to certify to the Secretary of State for use in the referendum. Petitioners are dissatisfied with the ballot title wording certified by the Attorney General.[1] Petitioners do not demonstrate that the proposed title fails to substantially comply with the statutory requirements for ballot titles. We approve the title certified by the Attorney General.

## SCOPE OF REVIEW

The statutes that empower this court to review ballot titles limit the scope of that review.

### A. *Administrative Process*

Since 1985, the legislature has provided an expanded administrative process to settle ballot titles. ORS 250.067 (Or Laws 1985, Chapter 447, Section 5). The 1985 legislature added subsection 5 to ORS 250.085, instructing this court, on review, to only consider arguments presented in writing to the Secretary of State during the administrative review process or arguments concerning changes made in a draft ballot title after the written comment period expired. ORS 250.085(5) (Or Laws 1985, Chapter 447, Section 6). *See Kafoury v. Roberts,* 303 Or 306, 311, 736 P2d 178 (1987) (interpreting that statutory limitation). The legislature established the informal administrative process as a speedy way to hear from interested parties and arrive at a usable ballot title.

■    The 1989 legislature further limited review by providing: "If no written comments are submitted to the Secretary of State, the Attorney General shall certify the draft ballot title

---

[1] Much of petitioners' dissatisfaction is also with the content of the legislation adopted. Statutory limits on scope of judicial review of a ballot title do not permit review of those dissatisfactions in this special proceeding. The test permitted on review is for "substantial compliance with the requirements of ORS 250.035 and 250.039." ORS 250.085(4).

* * *." ORS 250.067(2) (Or Laws 1989, Chapter 503, Section 5).

Simply submitting a title thought to be "better," even though it may be an improvement on that certified, is not sufficient "written comment" to give one standing to seek a review. *McMurdo v. Roberts,* 309 Or 318, 786 P2d 1268 (1990). The written comments to the Secretary of State "must have offered some criticism of the draft title that suggests * * * that the title does not substantially comply with the requirements of ORS 250.035 and 250.039." *Kafoury v. Roberts, supra,* 303 Or at 311.

### B. *Substantive Standards*

Ballot title review is purely a creature of statute. Grounds for review are legislatively limited to whether the ballot title is in "substantial compliance with the requirements of ORS 250.035 and 250.039." ORS 250.085(4). Statutory standards for "substantial compliance" include:

1. A caption which "reasonably identifies the subject of the measure" in 10 words or less, under ORS 250.035(1)(a);

2. A question which "plainly phrases the chief purpose of the measure" in 20 words or less, under ORS 250.035(1)(b);

3. "A concise and impartial statement" which summarizes "the measure and its major effect" in 85 words or less, under ORS 250.035(1)(c)."[2]

The requirement that a ballot title summary be "impartial" is to prevent argument, misleading descriptions, or emotionally laden words within the ballot title. A summary should provide accurate and neutral information to the voters, not an additional opportunity for proponents or opponents to persuade.

---

[2] Other standards, not implicated here, are statutorily mandated. For example, "[a] standard of minimum readability * * * to the fullest extent practicable consistent with the requirements of impartiality, conciseness and accuracy." ORS 250.039. Because petitioners made no challenge to the readability of the ballot title certified to the Secretary of State, that standard will not be considered further.

## C. *Review Petition Requirements*

■      The statute authorizing this special judicial review, ORS 250.085(2), requires that the petition for review "shall state the reasons the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035 and 235.039." Thus, the petition must state grounds related to the standards in those statutes. Further, those grounds must be ones raised in writing during the administrative process or grounds based on ballot title changes made during the administrative process. *Kafoury v. Roberts, supra.*

Oregon Rules of Appellate Procedure also prescribe some petition for review requirements. ORAP 11.30(4)(a) requires that the petition state the full text of the title certified by the Attorney General, show the reason the title does not substantially comply with the statutes, and propose a substitute ballot title which the petitioner contends would substantially comply.

### SUMMARY OF REFERRED LEGISLATION

According to the briefs of the parties, the measure repeals an existing exemption from state taxation of PERS payments but provides a compensating benefit to PERS members which once a year pays the members the amount which they have paid in taxes, because of the former exemption's repeal, with interest. A currently available state exclusion from income, subtracted from income to compute the taxable amount, is also modified in several ways so that federal, state, and local public agency retirees may exclude up to $5,000 of retirement income from taxable income if they meet a gross income test. A trust account is established to pay PERS retirees the annual benefit. An $18 million dollar payment from the general fund is deposited in the trust account but the public agencies which employed the affected state and local PERS members are obligated to ultimately pay the new benefit through the trust account. A task force is created to recommend to the legislature what to do after 1990.

### THE CERTIFIED TITLE AND PROPOSED SUBSTITUTE

After modifying the original draft ballot title through the administrative process, the Attorney General certified the following ballot title to the Secretary of State:

"REPEALS TAX EXEMPTION,
GRANTS ADDITIONAL BENEFIT PAYMENTS
FOR PERS RETIREES

**"QUESTION:**  Shall tax exemption for PERS pensions be repealed, and amount equaling taxes plus 11 percent interest returned to PERS retirees?

**"EXPLANATION:**  Removes state income tax exemption for benefits paid to Public Employees' Retirement System members (state, local public retirees). Requires annual, publicly funded payments to PERS retirees that equal previous year's taxes paid on PERS benefits, plus eleven percent interest. Allows limited $5,000 tax exclusion for benefits paid to PERS and federal government retirees. Establishes Public Employees' Tax Account; appropriates $18 million to make annual payments in 1989-91 period. Annual payments to PERS retirees authorized until 1991. Creates Task Force to report to legislature."

Petitioners propose that this court substitute a ballot title proposed by petitioners after the end of the administrative process. The proposed substitute reflects written comments made by one or more of the petitioners during the administrative process. Petitioners' suggested substitute title provides:

"REFUNDS TAXES PLUS INTEREST
TO CERTAIN RETIREES;
REPEALS TAX EXEMPTION

**"QUESTION:**  Shall taxes paid by Public Employees' Retirement System retirees be refunded to them, plus 11% interest, from the general fund?

**"EXPLANATION:**  Repeals state income tax exemption for pensions paid to all Oregon public retirees, but requires publicly financed refunds to Public Employees' Retirement System retirees only, equal to previous year's taxes paid plus 11% interest. Refunds not to be paid to private or to other public retirees. Allows limited $5,000 employees' tax exclusion only to public retirees. Establishes public employees' tax account; appropriates initial $18 million. If measure is not approved, existing law remains in effect. Approval of measure increases financial liability of state."

## PETITIONERS' CONTENTIONS

### A.  *Contents of Legislation Unfair*

Petitioners assert that the legislation is unfair to them and other persons who retired from employment with

the federal government. They point out that separate "class-action" litigation is pending elsewhere to determine the legality of the referred legislation.

Examples of petitioners' dissatisfaction with the contents of the legislation abound in the written comments submitted during the administrative process and the petition to review the certified ballot title. One petitioner suggested that the question to be certified to the voters for their answer should be:

> "**QUESTION:**  Does HB 3508 satisfy the March US Supreme Court's decision that requires all public pensions to be taxed alike in Oregon?"

Another petitioner commented that "the draft [ballot title] does not correctly address what HB 3508 should have done." A third characterizes the legislature's adoption of HB 3508 and the resulting referendum requiring a ballot title as "mean spirited grid lock." The petition for our review complains that the legislation which is the subject of the referendum contains a "refund mechanism [that] perpetuates *inequality* by purporting to repeal the tax exemption on retirement income, but giving all or virtually all of the taxes collected back to these retirees, plus interest thereon at the rate of 11% per annum."

In the context of a ballot title review, this court may not consider contentions about the legality or fairness of the legislative measure. Statutes concerning ballot title development and review contain no provision which could arguably permit a decision about the legality or fairness of the measure. A ballot title review is not designed to test the wisdom or propriety of the legislation to which it relates.

### B.  *Substitute Title More Accurate*

Petitioners ask the court to "determine that the petitioners' title is more accurate" than the title certified. That petitioners or this court could write a better ballot title is not a ground for overturning a certified ballot title under the statutes which limit our review. The ballot title statutes assign this court only the function of testing the title for "substantial" compliance with statutory standards. ORS 250.085(4); ORS 250.035(1). ORAP 11.30(4)(a) requires a petitioner who questions substantial compliance to demonstrate that compliance is possible within the word limits and other rules

imposed by statute. That review procedural rule does not, however, modify the administrative process for developing a usable ballot title or the substantive standards for evaluating such titles, both of which are controlled by the statutes.

### C.  *Caption*

■     Petitioners assert that the Caption places "misleading emphasis on repeal of the tax exemption versus the refund provisions." The respondent replies that the order of subjects, with repeal placed first followed by reference to the additional benefits to be paid, is logical because there can be no benefits paid until a tax payment is made and no tax payment will be made until the exemption from taxation is erased by repeal. The respondent also asserts that the loss of exemption is more significant — because it is permanent — than is the provision for additional benefit payments, a provision limited by the terms of section 12 of the measure to tax years beginning before January 1, 1991.

The referendum measure provides both for repeal of an exemption previously enjoyed by thousands of Oregonians and for an additional benefit to be paid to some taxpayers whose retirement incomes become taxable when that exemption is repealed. The certified Caption does not mislead by mentioning both parts of the enactment or by mentioning repeal first. *Cf. Reed v. Roberts,* 304 Or 649, 655, 748 P2d 542 (1988) (a chief purpose may have a "dual aspect"; where this is so, both shall be included in the question).

■     Petitioners also contend that the Caption contains "inadequate emphasis on the point that PERS retirees, but not other state and local retired employees, will be the only ones entitled to a refund." The respondent answers that the exemption repeal and additional benefits paid apply only to Public Employees' Retirement System members and that the Caption reads "for PERS retirees."[3]

Petitioners also suggest changing "PERS retirees" to "certain retirees." We are not persuaded that the less specific language proposed would improve substantial compliance

---

[3] Various groups of retirees will know of what retirement system they are members. Other voters are advised correctly by both Caption and Question that the major subject and chief purpose concern PERS members. The summary statement, limited to 85 words, advises in what way other public agency retirees may be affected.

with the statutory requirement that a caption reasonably identify the subject of the measure. The Caption in the certified ballot title substantially complies with this requirement. Therefore, the court is not statutorily empowered to consider whether the wording could be improved or made more exact.

### D. *Question*

■ Petitioners' complaints about the Question are three:

1. "Inadequate emphasis" that the "refund" will go only to PERS retirees;

2. Inaccurate implication that "only PERS members are affected by the measure when, in fact, the repeal encompasses all state and local retirees whether or not they are members of PERS"; and

3. The Question fails to identify the state general fund as the source of money to pay the "refunds."

To the first point, respondent replies that the Question clearly identifies the proposed recipients of the "refund." To the second and third points she responds that petitioners are mistaken about the effect of the legislation. Respondent states that HB 3508 does not repeal an existing state tax exemption for anyone other than PERS retirees, citing ORS 237.201, and that the initial general fund appropriation must be replenished by whatever public agency employed the PERS members affected, citing section 5(3) of HB 3508.

This court, for good reasons,[4] assiduously attempts to avoid deciding questions of interpretation of the practical effect of initiative or referendum measures in its review of a

---

[4] Those "good reasons" include:

a. Only an informal "hearing" record is made in the administrative process. It contains no findings. The criticisms of the draft title are known but the resolution of those criticisms in the certified title may only be inferred. Briefing and argument focus on the remaining criticisms and may not adequately develop meaning of the legislation itself.

b. The legislative history frequently useful in statutory interpretation is not yet available at the time of most ballot title appeals. *See Rogers v. Lane County,* 307 Or 534, 539, 542-45, 771 P2d 254 (1989) (discussing use of Voters' Pamphlet in interpretation).

c. The legislature appropriately calls for a speedy resolution of ballot title review. ORS 250.085(6). Interpreting direct legislation requires thoughtful deliberation. Speed and deliberation are not each other's handmaidens.

certified ballot title. The parties' contentions about scope or coverage of the exemption to be repealed are diametrically opposed. In order to settle this ballot title review we are logically compelled to make a preliminary decision in this case which determines the scope of the "exemption" that is repealed. We agree with respondent that ORS 237.201 on its face limits the exemption from tax to PERS payments. Likewise, present ORS 316.680(1)(d) (1987), on its face, limits its provisions permitting subtraction of retirement payments in calculating state taxable income to payments from PERS retirement funds. The amendments to ORS 316.680(1)(d) and ORS 237.201 which HB 3508 will accomplish, if the voters approve, repeal an exemption and modify a subtraction from taxable income which apply, on the face of the statutes, only to PERS payments of some nature.

Section 5(3) of HB 3508 requires that "refund" benefits paid to PERS retirees "shall be funded by employer contributions" and "shall be paid in full by the appropriate employer." The state general fund is not the only source of such payment. Funds for operations of state or local public employers participating in the Public Employees' Retirement System are derived from many sources. The sources include the state general fund for some public agencies but not for other agencies; a third group of agencies use both general funds and other funds. Petitioners' contrary contentions are in error and disclose no defect in the Question or other parts of this ballot title.

### E.  *Summary*

Petitioners contend that the statement summarizing the measure contains "inadequate emphasis on the identity of the source of funding." Petitioners also repeat the contention that other state or local employees are affected by repeal of the current exemption and assert that the explanation [Summary] does not disclose that "fact." For the reasons stated in discussing the petitioners' similar challenges to the Question, these points are based on erroneous assumptions about the legal effect of the measure. The Summary of the measure's major effect accurately identifies "publicly funded" benefits and who will receive the benefits.

The certified title is statutorily sufficient for use in the referendum. Ballot title certified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified ballot title will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment 10 days from the date of this decision, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator within seven days of this decision. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration. If the court denies the petition, the Administrator shall issue the appellate judgment the next judicial day after denial of the petition(s) for reconsideration.