Argued and submitted September 26, ballot title certified as modified November 24, reconsideration allowed by opinion December 21, 1995
See 322 Or 387, 908 P2d 825 (1995)

Bill SIZEMORE,
*Petitioner,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent,*

*and*

Alice DALE
and Robert Crumpton,
*Intervenors.*

(SC S42548)

905 P2d 1146

Gregory W. Byrne, of Byrne & Barrow, Portland, argued the cause and filed the petition for petitioner.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Lynn-Marie Crider, Salem, argued the cause and filed the memorandum for intervenor Alice Dale.

Paul B. Gamson, of Smith, Gamson, Diamond & Olney, Portland, filed the memorandum for intervenor Robert Crumpton.

VAN HOOMISSEN, J.

Durham, J., concurred and filed an opinion.

Unis, J., dissented and filed an opinion.

## VAN HOOMISSEN, J.

■ This is an original proceeding in which petitioner seeks review of a ballot title certified by the Attorney General.[1] Petitioner is entitled to bring this proceeding because he is an elector who timely submitted written comments about the Attorney General's draft ballot title. We review the Attorney General's ballot title for substantial compliance with ORS 250.035. ORS 250.085(5); *see, e.g., Hand v. Roberts*, 309 Or 430, 433, 788 P2d 446 (1990) (explaining statutory standards for substantial compliance review).

This is the first ballot title proceeding under the 1995 legislative amendments to ORS chapter 250 (initiative and referendum), which apply to initiative petitions filed on or after July 7, 1995. Or Laws 1995, ch 534.[2] For the reasons

---

[1] ORS 250.085 provides in part:

"(2) Any elector dissatisfied with a ballot title for an initiated or referred measure certified by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. The petition shall state the reasons that the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035[.]

"* * * * *

"(5) The court shall review the title for substantial compliance with ORS 250.035 * * *, and shall certify a title meeting this standard to the Secretary of State."

[2] Oregon Laws 1995, chapter 534, section 1, amended ORS 250.035 to provide:

"(2) The ballot title of any state measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words that reasonably identifies the subject matter of the state measure. The caption of an initiative or referendum amendment to the constitution shall begin with the phrase, 'Amends Constitution,' which shall not be counted for purposes of the 10-word caption limit;

"(b) A simple and understandable statement of not more than 15 words that describes the result if the state measure is approved. The statement required by this paragraph shall include either the phrase, 'I vote' or 'vote yes,' or a substantially similar phrase, which may be placed at any point within the statement;

"(c) A simple and understandable statement of not more than 15 words that describes the result if the state measure is rejected. The statement required by this paragraph shall include either the phrase, 'I vote,' or 'vote no,' or a substantially similar phrase, which may be placed at any point within the statement; and

"(d) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect.

that follow, we modify the Attorney General's certified ballot title.

The proposed initiative measure provides:

"Be in [*sic*] Enacted by the People of the State of Oregon:

"Paragraph 1. The Oregon Constitution is amended by creating new sections 10, 11, and 12 to be added to and made part of Article XV and to read:

"Preamble: WHEREAS public employees are as diverse in their political opinions as other members of society, and should not be required to financially support political candidates, parties or agendas inconsistent with their personal views; to protect and preserve the rights of public employees to free political expression and association;

"Section 10.(1) No public employee or applicant for a position with the state, a local government, or other political subdivision of the state including a school district or other taxing jurisdiction, shall be required or coerced to join or otherwise be connected to, or contribute fair share, or pay dues, fees, assessments or other moneys to a public employee union for any reason.

"(2) Public employees shall not be subject to any form of union security clause, or clauses that have the same or similar effect as union security clauses.

"(3) A public employee union shall not be required to represent or provide other services to an employee who is not a member of the union or does not pay moneys to the union.

"(4) No public employee or applicant for a public sector job shall be discriminated against in hiring or promotion due to affiliation or non-affiliation with a union.

"(5) So as to maintain and preserve the voluntary nature of public employee union membership, dues and any other moneys collected from a public employee by a union shall not be deducted from the employee's paycheck.

---

"(3) The statements required by subsection (2)(b) and (c) of this section shall be written so that, to the extent practical, the language of the two statements is parallel.

"(4) The statement required by subsection (2)(b) of this section shall be written so that an affirmative response to the statement corresponds to an affirmative vote on the state measure.

"(5) The statement required by subsection (2)(c) of this section shall be written so that an affirmative response to the statement corresponds to a negative vote on the state measure.

"(6) To avoid confusion, a ballot title shall not resemble any title previously filed for a measure to be submitted at that election."

"(6) All public employee unions annually shall provide each public employee from whom dues, fees or assessments were collected during the preceding year, a detailed, comprehensive, understandable report clearly stating all expenditures for political purposes, including the name of the payee and the amount paid or loaned to a political committee, party, or candidate during the preceding year.

"(7) A public employee who joins a public employee union may (i) elect not to pay that portion of dues, fees, assessments, or similar payments, which would be used for political purposes, or (ii) specify the political party, candidate or committee to which the political portion of that employee's dues, fees, assessments or other moneys shall be made, which designation shall be binding upon the union, which immediately shall carry out such instruction(s), making the contribution(s) in the name of the employee.

"(8) Existing statutes, ordinances, and resolutions which conflict with this Act are hereby repealed.

"Section 11.(1) If any part of Section 10 of this Article is held to be invalid when applied to a public employee who is or was a member of a public employee union or was paying fair share or other moneys to a union at the effective date of this Act, the requirements and restrictions set forth in this Section 10 shall be effective for such employee as soon as is lawful, and to any employee hired on or after the effective date of this Act.

"(2) For purposes of Sections 10 and 11 of this Article, the term public employee union shall mean any labor union, trade association or other employee organization which provides public employees with representation for purposes of collective bargaining or grievance resolution, or that provides other services normally associated with labor unions or employee associations.

"Section 12. SEVERABILITY. If any portion, clause, or phrase of Sections 10 or 11 of this Article is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, the remaining portions, clauses, and phrases shall not be affected, but shall remain in full force and effect."

The Attorney General certified the following ballot title for the proposed initiative measure:

"AMENDS CONSTITUTION: PUBLIC EMPLOYEES NEED NOT PAY UNION MONEY FOR ANY REASON

"RESULT OF 'YES' VOTE: 'Yes' vote forbids requiring public employees to pay union, allows unions not to represent non-payers.

"RESULT OF 'NO' VOTE: 'No' vote keeps current law requiring non-member public employees to share costs for union representation.

"SUMMARY: Amends Oregon Constitution. Public employee unions now must represent all employees, including non-members, and may require non-members to share representation costs. Measure forbids compelling non-members to share representation costs, and allows unions to deny representation to non-members who do not pay. Forbids discrimination against public employees, applicants in hiring or promotion based on union affiliation or non-affiliation. Forbids payroll deduction of dues. Bans union security clauses. Members may choose not to pay dues for political purposes, or may direct political contributions to their chosen recipient."

Petitioner argues that the Attorney General's certified ballot title does not substantially comply with ORS 250.035, because the Caption does not reasonably identify the subject matter of the measure and because the "yes" and "no" Result Statements are not simple and understandable. Petitioner does not challenge the Attorney General's Summary.

### The Caption

Petitioner argues that the words, "public employees need not pay," wrongly imply that the measure's focus is on what *employees* are permitted to do, when, in fact, its focus is on prohibiting certain conduct by *unions*. The Attorney General responds that, in a very similar measure and in virtually the same context, this court certified a Caption using the phrase "need not." *See Crumpton v. Kulongoski*, 319 Or 82, 87, 873 P2d 314 (1994) ("public employees need not share union representation costs").[3] We note, however, that in *Crumpton*, the "need not" wording was not challenged.

---

[3] *Crumpton v. Kulongoski* was decided under an earlier version of the law, ORS 250.035(1)(a) (1993), that provided that a ballot title should contain a "caption of not more than 10 words which reasonably identifies the subject of the measure." Although the legislature amended the statute to provide that the words "Amends Constitution" do not count toward the 10-word limit, the statute creates no other substantive difference regarding the Caption.

The proposed initiative measure provides in part that "No public employee * * * shall be required or coerced to join or otherwise be connected to, or contribute fair share, or pay dues, fees, assessments or other moneys to a public employee union for any reason." Those provisions focus on whether a public employee must pay money to a union in return for the union's representational efforts. The Attorney General's "need not" language summarizes those provisions accurately.

■ Petitioner also argues that the wording "public employees need not pay union money for any reason" might mislead voters into believing that public employees who receive services through a union, such as training or health insurance, would not need to pay for them. The Attorney General responds that that wording tracks the initiative measure itself. We agree. We conclude that the Attorney General's Caption reasonably identifies the subject matter of the proposed initiative measure and, therefore, that it substantially complies with ORS 250.035(2)(a).

*The Result Statements*

■ Petitioner argues that the Attorney General's "yes" Result Statement is not "simple and understandable," ORS 250.035(2)(b), because the wording, "forbids requiring public employees to pay union," fails to identify precisely what it is that a public employee is not required to pay. We reject that argument, because the Summary indicates that the measure relates to payments of "representation costs." Given that context, we conclude that ORS 250.035(2)(b) does not require a reference to representation costs in the "yes" Result Statement.

■ Petitioner also argues that the phrase, "forbids requiring," is confusing, but fails to explain why that is so. We decline to search for reasons on our own. *But see Greene v. Kulongoski*, 322 Or 169, 177, 903 P2d 366 (1995) (the risk of voter confusion by use of three negative terms requires modification of Caption). We conclude that the Attorney General's "yes" Result Statement is a simple and understandable statement that describes the result if the proposed initiative measure is approved and, therefore, that it substantially complies with ORS 250.035(2)(b).

■      Regarding the Attorney General's certified "no" Result Statement, the Attorney General concedes, and we agree, that it incorrectly suggests that present law requires nonmember public employees to share union representation costs. Current Oregon law does not require public employees who are not members of a union to share costs for union representation. Rather, it permits "fair-share" agreements between public employers and public employee labor organizations that require such cost sharing.[4] A ballot title should not misstate existing law, even by implication. *Dale v. Kulongoski,* 321 Or 108, 113, 894 P2d 462 (1995). Because the certified "no" Result Statement is incorrect as written, it does not substantially comply with ORS 250.035(2)(c).

In order to determine what wording should be used in this part of the ballot title, we must craft a simple and understandable statement that describes the result if the measure is rejected, ORS 250.035(2)(c), and, in addition, "to the extent practical, [make] the language of the two statements * * * parallel." ORS 250.035(3). We have concluded that the Attorney General's "yes" Result Statement substantially complies with ORS 250.035(2)(b). We therefore seek a "no" Result Statement that, "to the extent practical" is parallel to the approved "yes" Result Statement.[5]

Accordingly, we modify the "no" Result Statement to read:

---

[4] ORS 243.650(10) provides in part:

" 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employees whereby employees who are not members of the employee organization are required to make an in-lieu-of-dues payment to an employee organization except as provided in ORS 243.666."

A union that exclusively represents public employees must represent all public employees, including nonunion members, fairly. *Elvin v. OPEU,* 313 Or 165, 167, 832 P2d 36 (1992).

[5] We do not suggest that the foregoing methodology is the only permissible one. For example, in an appropriate case, it would be equally permissible to recast the "yes" statement, even when that statement is in substantial compliance (when viewed in isolation), in order to further parallelism. The statutory goal is two statements that substantially comply with the standards of ORS 250.035(2)(b) and (c) and, to the extent practical, parallel each other in form. Any methodology that achieves the statutory goal is acceptable.

RESULT OF "NO" VOTE: "No" vote allows agreements requiring public employees to share union representation costs; unions must represent everyone.

We conclude that the wording is a simple and understandable statement that describes the result if the proposed initiative measure is rejected and, therefore, that it substantially complies with ORS 250.035(2)(c). Moreover, it satisfies the requirement of ORS 250.035(3) that, "to the extent practical, the language of the two statements is parallel."

*The Summary*

As noted, petitioner does not challenge the Attorney General's Summary.

*Conclusion*

We certify the following ballot title:

AMENDS CONSTITUTION: PUBLIC EMPLOYEES NEED NOT PAY UNION MONEY FOR ANY REASON

RESULT OF "YES" VOTE: "Yes" vote forbids requiring public employees to pay union, allows unions not to represent non-payers.

RESULT OF "NO" VOTE: "No" vote allows agreements requiring public employees to share union representation costs; unions must represent everyone.

SUMMARY: Amends Oregon Constitution. Public employee unions now must represent all employees, including non-members, and may require non-members to share representation costs. Measure forbids compelling non-members to share representation costs, and allows unions to deny representation to non-members who do not pay. Forbids discrimination against public employees, applicants in hiring or promotion based on union affiliation or non-affiliation. Forbids payroll deduction of dues. Bans union security clauses. Members may choose not to pay dues for political purposes, or may direct political contributions to their chosen recipient.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(9).

**DURHAM, J.,** concurring.

This is the first ballot title challenge decided under the 1995 amendment to ORS 250.035 and 250.085, which

replaced the former "question" element of a ballot title with separate statements describing the results of "yes" and "no" votes on the measure. Or Laws 1995, ch 534, § 1.

In *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 25, 902 P2d 1143 (1995), a majority of this court held that ORS 250.085 (1993), which required this court to review and, if necessary, modify ballot titles prepared by the Attorney General, did not offend the separation of powers principle described in Article III, section 1, of the Oregon Constitution. That section provides:

> "The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Justice Unis dissented in *Rooney*, concluding that drafting and certifying a ballot title for an initiative measure is not a judicial function and, for that reason, is not a duty that the legislature can impose on officers of the judicial branch of government. *Rooney*, 322 Or at 55 (Unis, J., dissenting). I joined Justice Unis' dissent.

The 1995 amendment to ORS 250.085 contains the same flaw that Justice Unis identified in *Rooney* in his discussion of the former version of that statute. For at least two reasons, the rationale expressed in the majority opinion in *Rooney* is not a sufficient answer to the separation of powers problem that infects the 1995 amendment to ORS 250.085. First, *Rooney's* conclusion that, in drafting and certifying a new ballot title, the court is carrying out only "classic adjudicatory functions," 322 Or at 29, contradicts the court's premise for its discussion of the separation of powers issue, *i.e.*, "that the preparation of a ballot title is a *legislative* function." *Id.* at 25 (emphasis added). One may debate the *Rooney* court's suggestion that drafting a new ballot title for an initiative measure resembles the judicial function of granting a remedy in an adjudication. However, the reasoning process that produced the majority's conclusion, which those two quoted passages exemplify, simply fails to withstand analysis.

Second, the *Rooney* majority concluded that ballot titles are helpful to the initiative process and, for that reason, the statutory requirement in ORS 250.085 that the court redraft and certify a new ballot title is valid "law not inconsistent" with Article IV, section 1(4)(b), of the Oregon Constitution, which provides:

"Initiative and referendum measures shall be submitted to the people as provided in this section and by law not inconsistent therewith."

*Rooney*, 322 Or at 25. Unlike the *Rooney* majority, I am unwilling to read that section to authorize the legislature to adopt legislation compelling judicial officers to perform a nonjudicial function in violation of Article III, section 1. Under that section, only by authority of an *express* provision of the constitution may a judicial officer perform a nonjudicial function. The "law not inconsistent" clause of Article IV, section 1(4)(b) is not such an express provision.

For the reasons expressed above and in Justice Unis' dissent in *Rooney*, I continue to believe that the current version of ORS 250.085 violates the separation of powers principle in Article III, section 1. However, the majority regards *Rooney* as controlling on that question. Until a majority of this court modifies its view or the legislature modifies the statutory scheme, a repetition of my dissenting opinion would serve no constructive purpose. Accordingly, I concur in the majority's result.

**UNIS, J.,** dissenting.

I adhere to my view that, to the extent that ORS 250.085(5) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different than the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution. *Rooney v. Kulongoski (Elections Division # 13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting). I would, therefore, dismiss this case for lack of jurisdiction.