Argued and submitted November 21, 1995, ballot title certified January 19, 1996

Andrew G. ANDERSON
and Sharon Beck,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent,*

*and*

Deborah DAVIS,
Patrick Shipsey, Nelson Wallulatum,
Bill Marlett, and Jim Dwyer,
*Intervenors.*

(SC S42718)

909 P2d 157

John DiLorenzo, Jr., of Hagen, Dye, Hirschy & DiLorenzo, P.C., Portland, argued the cause for petitioners. With him on the petition was Michael E. Farnell.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering

memorandum were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

James S. Coon, of Swanson, Thomas & Coon, Portland, argued the cause for intervenors.

PER CURIAM

Fadeley, J., filed a dissenting opinion in which Carson, C. J., and Gillette, J., joined.

## PER CURIAM

This is an original proceeding for review of a ballot title for an initiative measure that proposes to enact a statute. Petitioners are electors who, in a timely manner, filed written comments with the Secretary of State pursuant to ORS 250.067(1) and who, therefore, are entitled to bring this proceeding under ORS 250.085.

The Attorney General certified this ballot title for the proposed initiative measure:

"PROHIBITS LIVESTOCK IN CERTAIN POLLUTED WATERS OR ON ADJACENT LANDS

"RESULT OF 'YES' VOTE: Vote 'yes' to prohibit livestock in or along certain polluted waters in state, with exceptions.

"RESULT OF 'NO' VOTE: Vote 'no' to reject law prohibiting livestock in or along certain polluted waters in state.

"SUMMARY: Measure would prohibit livestock in certain waters in Oregon, and on adjacent land, if waters do not meet state water quality standards and the livestock would contribute to poor water quality. State Department of Agriculture may allow exemptions if certain criteria are met. Any person may sue to enforce law. Measure applies to state, federal, and private waters and land. Persons required to comply may receive tax credit and state funding. Measure's operative dates are delayed, depending on land ownership and type of habitat affected."

We have considered all of petitioners' arguments as to why that ballot title does not comply substantially with the requirements of ORS 250.035(2). We are not persuaded by any of those arguments. Accordingly, we decline to modify the Attorney General's ballot title.

Ballot title certified. This decision shall become effective in accordance with ORAP 11.30(10).

**FADELEY, J.,** dissenting.

The ballot title in this case does not disclose to the voters either the subject matter of this proposed measure or the result of adopting it. The ballot title should be modified to provide those items of information to the voters, because that is required by statute. ORS 250.035.

The deficiencies of the ballot title are compounded by the use of the derogatory word "pollution" in the proposed ballot title, when the proposed measure has a much broader reach than is conveyed by the commonly understood meaning of the term "pollution." That use of the word "pollution" in the proposed ballot title will, in the words of *Greene v. Kulongoski*, 322 Or 169, 175, 903 P2d 366 (1995),[1] "confuse or mislead potential petition signers and voters."

Although section 1 of the proposed measure contains a goal statement about protecting the waters of the state from "pollution" caused by livestock, it does not contain any prohibition or language related to enforcement or application of that goal. The new prohibitions and action provisions of the measure are found in section 2(1). They provide:

> "[N]o person shall allow livestock in the waters of the state or within designated riparian land if the waterway is designated as water quality limited by the Department of Environmental Quality and livestock contribute to the violation of the applicable standards of water quality and purity adopted pursuant to ORS 468B.048."

The action provisions do not contain the word "pollution" but instead are substantially broader, referring to limited quality water and the nearby land that government may designate as affected by that water. Department of Environmental Quality (DEQ) already has issued regulations dealing with "water quality limited" that go beyond any question of "pollution" as that term commonly is understood, used, or defined.[2] Under both the statute referred to in the measure and DEQ's regulations, the proposed measure's coverage would include water with quality limitations as

---

[1] *Greene* was decided under the pre-1995 version of ORS 250.035, which called for a ballot title to identify the "subject" of the measure. Oregon Laws 1995, chapter 534, section 1, requires identification of the "subject matter." That change in terminology is not significant in relation to the issue of confusing or misleading voters about a measure's subject. The measure goes beyond a simple reference to pollution, and pollution, as it is commonly understood, is not the subject of the main prohibitions of the measure.

[2] ORS 468B.048 is not by its terms limited to pollution, but instead speaks in terms of "standards of [water] quality and purity." That statute allows the Environmental Quality Commission to "establish standards" for water "quality and purity" that include the extent of "dissolved oxygen" or "oxygen demand" present in the water, or the permissible amount of "floating," "suspended," or "settleable" solids in the water, or "colloids or a combination of solids" in the water.

distinguished from polluted water. *Both* the statute and the regulations include within their sweep water quality limitations caused by silt or leaf residue, as well as by lack of a certain level of dissolved oxygen. ORS 468B.048; OAR 340-41-006(30); OAR 340-41-805(2).

Likewise, the "yes" portion of the result statement is inadequate to advise the voters, as ORS 250.035(2)(b) requires, of the result of adopting the measure. The result statement again refers only to "polluted" waters. But the text of the measure is based on areas designated by DEQ adjacent to designated waterways, with the agency's designation based not on whether certain waters are "polluted" but, instead, on whether those waters are "water quality limited." That foundation term — water quality limited — is not defined in the measure, but instead is defined in the regulations of the agency, which regulations are subject to change by that agency from time to time. OAR 340-41-006(30).

In any event, as presently defined, "water quality limited" is not a synonym of "polluted." To limit water quality is not the same as to pollute. "Pollute" means to dirty, defile, desecrate, befoul, taint, or make a water supply unclean "by the introduction of sewage." *Webster's Third New Int'l Dictionary,* 1756 (unabridged ed 1993). Thus, the word used in the ballot title is not merely inaccurate, it is a word carrying a heavy freight of negative connotations. Use of an inaccurate word carrying such negative connotations constitutes an argument for the adoption of the measure. Arguments should not appear in a ballot title. Its function is to inform the voters, not to persuade them for or against a measure. *Hand v. Roberts,* 309 Or 430, 433, 788 P2d 446 (1990).

To summarize, the vice of the certified ballot title is that it focuses on a word having a common understanding, when the measure's scope in fact extends well beyond that common understanding. Because voters will rely on the common understanding of the word, they will not be informed of the real subject matter or the real result of the measure. More than a failure to inform is involved, however: use of the word "pollution" misleads. A ballot title that misleads violates our precedents. *Greene,* 322 Or at 175; *Witt v. Kulongoski,* 319 Or

7, 15-16, 872 P2d 14 (1994); *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 174, 777 P2d 406 (1989).

In *Greene*, this court held that a ballot title caption did not substantially comply with the statutory requirement that a caption reasonably identify the subject of a proposed measure, because of the risk of voter confusion that arose from employing three negative descriptors in close proximity to each other. In *Witt*, this court held that use of the words "bans clear cutting" in a ballot title was misleading, where a special definition, extending the coverage of that term, was included in the measure. In *Fred Meyer*, this court held that use of the verb "protects" was misleading, where the measure would create the new right to which that verb referred.

The Caption should state:

ALLOWS DEPARTMENT OF ENVIRONMENTAL
QUALITY TO LIMIT CATTLE GRAZING LOCATIONS

Accordingly, the statement of result of a "yes" vote should read:

Vote "yes" to allow Department of Environmental Quality to designate locations where livestock are prohibited.[3]

The statement of result of a "no" vote should parallel and be the opposite of the "yes" statement. The "no" statement should read:

Vote "no" to retain present law, regulations concerning locations where livestock are permitted.

In this court, the Attorney General concedes that the Summary is inaccurate in at least one respect that is pointed out here by petitioner. Correcting that inaccuracy and making related changes caused thereby would result in the following Summary:

SUMMARY: Measure prohibits livestock in waters and on adjacent lands designated by DEQ, if livestock may contribute to limiting water quality. Feed lots may qualify for exemptions, other exemptions may apply. Any person may sue to enforce law. Measure applies to all lands and private

---

[3] Feed lots are exempt under section 2(3)(b) of the measure, when the lot is operating under a permit issued pursuant to ORS 468B.050, as the Summary indicates.

and state waters. Persons affected may apply for tax credit and state funding. Various future operative dates for act are specified based on types of land ownerships, habitats affected.

I would certify a modified title in accordance with this opinion. Because the majority declines to do so, I am compelled to dissent.

Carson, C. J., and Gillette, J., join in this dissenting opinion.