Submitted on the petition, memoranda of respondent and intervenor, and on the record, March 9, ballot title certified as modified March 13, 2000

## Mark W. NELSON,
*Petitioner,*

*v.*

## Hardy MYERS,
## Attorney General for
## the State of Oregon,
*Respondent,*

*and*

## John PORTER,
*Intervenor.*

## (SC S47084)

996 P2d 975

James M. Brown, of Enfield Brown Collins & Knivila, Salem, filed the petition for petitioner.

Jas. Jeffrey Adams, Assistant Attorney General, Salem, filed the answering memoranda for respondent. With him on the memoranda were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Kelly Clark, of O'Donnell & Clark LLP, Portland, filed the response for intervenor.

GILLETTE, J.

Van Hoomissen, J., concurred in part and dissented in part, and filed an opinion.

Riggs, J., concurred and filed an opinion.

**GILLETTE, J.**

This is a ballot title review proceeding with respect to a referred measure. *See* ORS 250.085(2) (permitting challenge to ballot title for "an initiated or referred measure"). The measure refers to the voters legislation enacted during the 1999 Legislative Session, House Bill 2082 (1999); Or Laws 1999, ch 1060, which relates, among other things, to motor carrier and fuel taxes. Petitioner is an elector who timely submitted written comments to the Secretary of State concerning the content of the draft ballot title proposed by the Attorney General. He therefore is entitled to seek review of the ballot title certified by the Attorney General. *See* ORS 250.085(2) (stating that requirement). We review for substantial compliance with the requirements for ballot titles set out in ORS 250.035 (1997). ORS 250.085(5). For the reasons discussed below, we modify the Attorney General's ballot title.

■ Before turning to the merits, we first address a procedural question arising out of the intervention in this proceeding by one of the chief petitioners for the measure. ORAP 11.30(8) provides, in part:

> "Additional persons, including the chief proponent or proponents of a measure, interested in a ballot title that is the subject of a petition may file a motion * * * asking leave of the Supreme Court to intervene and respond to the petition or the Attorney General's answering memorandum, or both."

Invoking that rule, the chief petitioner sought and was granted leave to intervene in this proceeding. Together with his motion to intervene, intervenor advanced various arguments concerning why, in his view, the Attorney General's certified ballot title fails to comply substantially with statutory standards. Those arguments posit different alleged deficiencies in the Attorney General's certified ballot title than those asserted by petitioner; they do not attempt to defend the Attorney General's certified ballot title from the arguments advanced by petitioner. Intervenor also proffered a different ballot title, based on intervenor's criticisms of the Attorney General's certified ballot title, and urged the court

to certify that ballot title in lieu of the title that had been certified by the Attorney General.

The Attorney General objects to intervenor's arguments on the ground that intervenor neither submitted comments to the Secretary of State concerning the draft ballot title nor separately petitioned for review of the Attorney General's certified ballot title. The Attorney General asserts that intervenor may not avoid the statutory restrictions on the right to file a petition to review a ballot title by seeking a different ballot title through a motion to intervene. For the reasons that follow, we agree that the foregoing argument is well taken under the particular facts of this case.

ORS 250.085(2) limits the persons who may challenge a ballot title to "[any] elector * * * who timely submitted written comments on the draft ballot title." In addition to that restriction, ORS 250.085(3) and (4) contain time-line and notice requirements that such electors must satisfy before obtaining Supreme Court review. And, with respect to that review, ORS 250.085(6) enjoins this court from considering "arguments concerning the ballot title not presented in writing to the Secretary of State," unless an exception (inapplicable here) applies. Intervenor has not satisfied those prerequisites. Thus, although he may offer alternative solutions to any defects in the Attorney General's certified ballot title that petitioner may have identified, intervenor may not himself obtain a different ballot title based on new and different alleged defects in that ballot title that only intervenor asserts.

The permissive intervention that ORAP 11.30(8) authorizes is not inconsistent with the foregoing analysis. As noted, that rule permits "additional persons," on being granted leave to intervene in a ballot title review proceeding, to do one of three things: "respond to the petition or the Attorney General's answering memorandum, or both." Because intervenor's arguments cannot be read to respond either to the petition or to the Attorney General's answering memorandum, we decline to consider them. And, because intervenor's proffered alternative ballot title is not responsive to any alleged deficiencies in the Attorney General's certified

ballot title that petitioner raises, we likewise decline to consider it.

■ We turn to petitioner's arguments. The Attorney General certified the following ballot title for the referred measure:

"REPEALS TRUCK WEIGHT-MILE TAX;
ESTABLISHES AND INCREASES FUEL TAXES

"RESULT OF 'YES' VOTE: 'Yes' vote repeals truck weight-mile tax; establishes diesel tax; increases gas tax, registration fees.

"RESULT OF 'NO' VOTE: 'No' vote retains weight-mile highway tax on trucks; rejects increasing gas tax, registration fees.

"SUMMARY: Currently, motor carriers pay highway tax based on truck weight, miles driven. Measure repeals weight-mile tax. Establishes diesel fuel tax (29 cents per gallon). Increases gasoline tax by five cents to diesel tax rate. Raises vehicle registration fees. Requires licenses for diesel fuel suppliers, distributors, certain dyed diesel fuel users, others. Requires recordkeeping and monthly tax reports by licensees. Authorizes transportation department to enforce requirements, including inspections, notices, tax collection, reassessment, credits, refunds. Provides remedies for violations, including fines, penalties, criminal sanctions. Other provisions."

Petitioner challenges the caption, the result statements, and the summary. He raises essentially two arguments. First, he asserts that the Attorney General inaccurately has described the measure as *repealing* the truck weight-mile tax. Petitioner notes that a separate enactment during the 1999 legislative session amended House Bill 2082 to provide that the weight-mile tax is to be *suspended* until January 1, 2006, rather than repealed. Or Laws 1999, ch 1075, § 2. As the Attorney General notes, however, petitioner did not present that argument to the Secretary of State. Accordingly, we may not consider it. ORS 250.085(6).

■ Second, petitioner argues that the Attorney General's ballot title fails to comply substantially with statutory standards. That is so, petitioner claims, because nowhere in

the ballot title does the Attorney General describe the uses to which the revenues that the measure is intended to generate will be put, *viz.*, road and bridge modernization, maintenance, and preservation. The Attorney General responds that describing the intended uses for the additional revenues that the measure is expected to generate improperly would discuss the purpose of the measure. The Attorney General also believes that such a description would be, in essence, an abstract interpretation of the measure.

We disagree. Several sections of the measure expressly prescribe the different uses to which the expected revenues from the measure are to be put. Those uses are a major effect of the proposed measure, tying the alternative taxing scheme that voters are being asked to adopt with the purposes to which the money raised by that taxing scheme would be devoted. We conclude that the ballot title should have referred, in a general manner, to those uses. The Attorney General's failure to do so means that the Attorney General's ballot title does not comply substantially with the requirements of ORS 250.035 (1997). In our view, adding the following sentence to the summary cures that deficiency: "Additional revenue to be used primarily for road and bridge modernization, maintenance, and preservation."

The remaining question is, where does that sentence belong? We disagree with petitioner that such a reference, even if it could fit within the applicable word limitations of the caption or result statements, appropriately belongs in either place. The caption pertains to the "subject matter" of a measure, ORS 250.035(2)(a) (1997), and the result statements pertain to the results if the measure is approved or rejected, ORS 250.035(2)(b) and (c) (1997). The uses for the expected revenue are not the subject matter of the measure; neither, we think, are they a result so substantial that a place for them must be found in the result statements. Instead, we conclude that the reference to revenue uses is a major effect of the measure that appropriately belongs in the summary. *See* ORS 250.035(2)(d) (1997) (requiring "statement of not more than 85 words summarizing the measure and its major effect").

To include such a reference in the summary and yet comply with the 85-word limit, we must excise from the existing summary certain text that we conclude, although permissible in a summary, is not needed to make the present summary comply substantially with ORS 250.035(2)(d) (1997). That text consists of the phrases "certain dyed diesel fuel users" and "including inspections, notices, tax collection, reassessment, credits, refunds." We also eliminate one of the conjunctions from the summary.[1]

We certify the following ballot title for the referred measure to the Secretary of State:

### REPEALS TRUCK WEIGHT-MILE TAX; ESTABLISHES AND INCREASES FUEL TAXES

RESULT OF "YES" VOTE: "Yes" vote repeals truck weight-mile tax; establishes diesel tax; increases gas tax, registration fees.

RESULT OF "NO" VOTE: "No" vote retains weight-mile highway tax on trucks; rejects increasing gas tax, registration fees.

SUMMARY: Currently, motor carriers pay highway tax based on truck weight, miles driven. Measure repeals weight-mile tax. Establishes diesel fuel tax (29 cents per gallon). Increases gasoline tax by five cents to diesel tax rate. Raises vehicle registration fees. Additional revenue to be used primarily for road and bridge modernization, maintenance, and preservation. Requires licenses for diesel fuel suppliers, distributors, others. Requires recordkeeping, monthly tax reports by licensees. Authorizes transportation department to enforce requirements. Provides remedies for violations, including fines, penalties, criminal sanctions. Other provisions.

Ballot title certified as modified. Pursuant to ORAP 1.20(4) and notwithstanding ORAP 11.30(10), the State Court Administrator shall issue the appellate judgment at

---

[1] To the extent that petitioner can be said to have raised additional arguments concerning the Attorney General's ballot title that are separate from those already discussed, we have considered those arguments and hold that none of them demonstrates that the Attorney General's ballot title fails to comply substantially with statutory standards.

5:00 p.m. on March 14, 2000, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. Any timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on such petition.

**VAN HOOMISSEN, J.,** concurring in part, dissenting in part.

I concur in that part of the majority opinion that explains the role of an intervenor in a ballot title review proceeding. ORAP 11.30(8).

I respectfully dissent from that part of the majority opinion that finds it necessary to modify the Attorney General's certified ballot title for the referred measure. I would hold that the certified ballot title substantially complies with the statutory requirements for ballot titles set out in ORS 250.035 (1997). ORS 250.085(5).

I wish to note, however, that the unspoken premise on which this court's modification decision is based is that it does not violate the principle of separation of powers for this court to rewrite an explanatory statement or a certified ballot title. *See Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting) (arguing that judicial modification of ballot titles offends Article III, section 1, of the Oregon Constitution); *Sizemore v. Kulongoski*, 322 Or 229, 237, 905 P2d 1146 (1995) (Durham, J., concurring) (same). That premise needs to be revisited and, I trust, will be in an appropriate case.

**RIGGS, J.,** concurring.

I concur with the majority, but write separately because I harbor significant concerns about the separation of powers issues discussed in *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting), and *Sizemore v. Kulongoski*, 322 Or 229, 238, 905 P2d 1146 (1995) (Durham, J., concurring). Although I agree with the concurring opinion of my colleague, Justice Van Hoomissen, as to the need to revisit those issues, I believe that such a review should take place sooner rather than later. Nevertheless, partly because of the extreme time pressures that resolution of this particular ballot title case presents, I

am content, for the moment, to wait for a more appropriate case to explore the parameters of those issues, with the assistance of interested parties and the Attorney General.