Submitted on the record February 28, ballot title referred to Attorney General for modification March 9, ballot title certified April 4, 2006 (340 Or 360)

William (Bill) PERRY,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S53130)

Steven NOVICK,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S53138)
(Cases Consolidated)

131 P3d 721

Michael Mills, Salem, filed the petition and reply memorandum for petitioner William (Bill) Perry.

Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petition and reply memorandum for petitioner Steven Novick.

Elizabeth A. Gordon, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

These ballot title review proceedings brought under ORS 250.085(2) concern the Attorney General's certified ballot title for a proposed initiative measure that the Secretary of State has designated Initiative Petition 113 (2006).[1] The proposed measure seeks to establish rates for the commissions that retailers receive from video lottery revenues and to direct increases in video lottery revenues to fund education.

Petitioners are electors who timely submitted comments to the Secretary of State concerning the Attorney General's draft ballot title. They therefore are entitled to seek review of the resulting certified ballot title in this court. ORS 250.085(2). Petitioners assert that the certified ballot title fails to comply with the requirements of ORS 250.035. We review the Attorney General's certified ballot title to determine whether it substantially complies with those requirements, *see* ORS 250.085(5) (stating standard of review), and we conclude that it fails to comply in several respects. We therefore refer the ballot title to the Attorney General for modification.

The measure proposes several statutory changes. Under the current scheme, administrative rules rather than statutes set the commissions that retailers receive from video lottery revenues. Those rules establish "tiered" commission levels, which we describe below. The proposed measure would limit video lottery retailers' commissions to 18 percent of net receipts. It defines "net receipts" as "the amount of money that is received by the video lottery establishment from the operation of video lottery games after payment of prizes." Beginning in July 2007, any "increase" in state video lottery revenues would be dedicated to K-12 public education, unless the state constitution directs otherwise. The proposed measure defines an "increase" in video lottery revenues as "an increase in the dollar amount of such revenues in any fiscal year over the amount of such revenues in the July 1, 2006–June 30, 2007 fiscal year." The proposed measure defines "[s]tate [v]ideo [l]ottery revenues" as "the amount of

---

[1] Two petitioners challenged the Attorney General's certified ballot title in separate proceedings. We consolidated those proceedings for purposes of review.

money the State receives from Video Lottery operations (not including payments of prizes or payments to retailers)."

The Attorney General certified the following ballot title for the measure:

"LIMITS RETAILERS' PAYMENTS FROM NET VIDEO LOTTERY RECEIPTS; DEDICATES INCREASED VIDEO LOTTERY REVENUES TO EDUCATION

"RESULT OF 'YES' VOTE: 'Yes' vote limits retailers' payments from net video lottery receipts to no more than 18 percent. Dedicates increase in video lottery revenue to K-12 education.

"RESULT OF 'NO' VOTE: 'No' vote retains existing system directing Lottery Commission to determine retailer compensation. Video retailers receive payments from 11 percent to 32.5 percent of net receipts.

"SUMMARY: Under current law, State Lottery Commission determines payments to lottery retailers. Video retailers may receive payments from 11 to 32.5 percent of net receipts; video lottery proceeds are dedicated to lottery bonds, economic development, job creation, educational stability, park/natural resource funds. Measure limits video lottery retailers' compensation to no more than 18 percent of 'net receipts'; 'net receipts' are video lottery operational revenues. Beginning July 1, 2007, measure requires 'increase' in net proceeds of video lottery revenues be dedicated to public K-12 education; 'increase' is increase in video lottery revenues in any fiscal year over such revenue for fiscal year ending June 30, 2007. Net proceeds do not include video lottery revenues constitutionally required for deposit to educational stability/natural resource funds. Other provisions."

Petitioner Perry challenges the caption, the "yes" vote result statement, and the summary of the certified ballot title. Petitioner Novick challenges the "no" vote result statement and the summary. The Attorney General concedes that the "no" vote result statement and the summary require modification and requests that we refer the ballot title for modification.

## CAPTION

■ Perry advances three arguments that the caption does not substantially comply with the requirements of ORS 250.035. We cannot consider two of them because Perry did not raise them before the Secretary of State. *See* ORS 250.085(6) (court cannot consider arguments not made to Secretary of State); *Nelson v. Myers*, 330 Or 92, 97, 996 P2d 975 (2000) (applying ORS 250.085(6)).[2] We have considered Perry's third argument with respect to the caption and have concluded that it is not well-taken.

## "NO" VOTE RESULT STATEMENT

■ The "no" vote result statement is "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). As stated above, the certified "no" vote result statement provides:

"RESULT OF 'NO' VOTE:   'No' vote retains existing system directing Lottery Commission to determine retailer compensation. Video retailers receive payments from 11 percent to 32.5 percent of net receipts."

Petitioner Novick argues, and the Attorney General agrees, that the reference to 11 percent as the lowest rate is misleading: That rate will not apply under current law until 2007, and its application then is contingent on an increase in video lottery revenues. OAR 177-040-0029(2)(a). The Attorney General agrees that the correct level is 12 percent.

Novick also argues that the "no" vote result statement fails to make clear that the payment rates to which it refers are marginal rates based on a retailer's sales volume. A retailer who offers only video poker games must choose either a three-tier compensation option or a two-tier compensation option. OAR 177-040-0027(2). Under the three-tier option, the retailer receives 32.5 percent of the net receipts up to $175,000, 26 percent of the net receipts between $175,000 and $475,000, and 17 percent of the net receipts in

---

[2] We reject Perry's challenge to the "yes" vote result statement for the same reason.

excess of $475,000. OAR 177-040-0027(2)(a). Under the two-tier option, the retailer receives 26 percent of the net receipts up to $650,000 and 19 percent of the net receipts in excess of $650,000. OAR 177-040-0027(2)(b).

A retailer who offers both video poker games and video line games must choose either a four-tier compensation option or a three-tier compensation option. OAR 177-040-0028(2). Under the four-tier option, the retailer receives 29 percent of the net receipts up to $175,000, 24 percent of the net receipts between $175,000 and $475,000, 15 percent of the net receipts between $475,000 and $800,000, and 12 percent of the net receipts in excess of $800,000. Under the three-tier option, the retailer receives 23 percent of the net receipts up to $600,000, 18.5 percent of the net receipts between $600,000 and $1,800,000, and 12 percent of the net receipts in excess of $1,800,000.

Novick argues that "it is inaccurate to use the marginal rates to describe retailer compensation—without additional explanation." He points out that, even with the Attorney General's concession that the "no" vote result statement should refer to "12 percent" rather than "11 percent," that statement still is inaccurate because *no* retailer receives a payment of 12 percent of net receipts. Rather, Novick argues, under the current scheme, most retailers receive a "blended" commission rate based on the payment option that they choose and their level of sales. He proposes that the "no" vote result statement refer instead to the "average" percentage payments that video lottery retailers receive.

We agree with Novick that the certified "no" vote result statement is inaccurate because no retailer could receive payments of 12 percent (or 11 percent) on all of their net receipts due to the graduated nature of the compensation scheme. Moreover, the statement implies that the payments mentioned are the actual rates that particular retailers receive under the current system, rather than marginal rates that apply depending on which payment option a retailer chooses and the retailer's net receipts. We therefore conclude that the Attorney General's "no" vote result statement fails to comply substantially with the requirements of ORS 250.035(2)(c). The "no" result statement must accurately

describe in some way the graduated rate structure under current law or the results that that structure produces.

We do not agree, however, that the "no" vote result statement must refer to the average retailer commission, as Novick suggests. As the Attorney General points out, an average commission figure could be misleading because it fluctuates depending on the level of net receipts. The Attorney General may find it useful to use some rate other than the marginal rates contained in the administrative rules to describe the current compensation structure, but he is not required to do so. It is the Attorney General's task, in the first instance, to draft a revised "no" vote result statement, consistently with this opinion, that helps the voter "understand the state of affairs that will exist if the voters reject the proposed measure." *Nesbitt v. Myers*, 335 Or 424, 433, 71 P3d 530 (2003).

## SUMMARY

The summary must be "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." ORS 250.035(2)(d).

As noted above, the certified summary states:

"SUMMARY: Under current law, State Lottery Commission determines payments to lottery retailers. Video retailers may receive payments from 11 to 32.5 percent of net receipts; video lottery proceeds are dedicated to lottery bonds, economic development, job creation, educational stability, park/natural resource funds. Measure limits video lottery retailers' compensation to no more than 18 percent of 'net receipts'; 'net receipts' are video lottery operational revenues. Beginning July 1, 2007, measure requires 'increase' in net proceeds of video lottery revenues be dedicated to public K-12 education; 'increase' is increase in video lottery revenues in any fiscal year over such revenue for fiscal year ending June 30, 2007. Net proceeds do not include video lottery revenues constitutionally required for deposit to educational stability/natural resource funds. Other provisions."

■       Novick makes four points. He argues, and the Attorney General agrees, that the reference to 11 percent is incorrect. He also maintains that the summary does not adequately describe the nature of the marginal rates. We agree for the reasons previously stated.

Novick further asserts, and the Attorney General agrees, that lottery proceeds fund both the educational stability fund and general education, and that it is inaccurate to refer only to "educational stability."

Finally, both Novick and Perry point out that the summary does not provide a correct definition of "net receipts." They argue that the phrase is supposed to describe the funds that the lottery receives after the expenditure of funds paid as prizes. The Attorney General concedes that, because the portion of the text of the summary discussing net receipts is potentially confusing, it must be rewritten.[3]

We conclude that the Attorney General's summary does not comply substantially with the requirements of ORS 250.035(2)(d).

For the foregoing reasons, we conclude that the ballot title must be remanded to the Attorney General for modification.

Ballot title referred to Attorney General for modification.

---

[3] Perry also advances an argument regarding the summary that he did not raise before the Secretary of State. We decline to address it. ORS 250.085(6).