Argued and submitted October 31, 1995, ballot title certified as modified
February 1, 1996

Ruth ASCHER,
Lynn R. Nakamoto, Emilio Hernandez, Jr.,
James Posey, Jann Carson,
*Petitioners,*

*v.*

Theodore KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42630)

909 P2d 1223

Scott Meyer, of Mitchell, Lang & Smith, Portland, argued the cause and filed the petition for petitioners.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DURHAM, J.

Unis, J., dissented and filed an opinion.

## DURHAM, J.

This is an original proceeding in which petitioners challenge the Attorney General's ballot title for a proposed initiative measure that the Secretary of State's office has designated as "Elections Division #47." Petitioners are electors who, in a timely manner, submitted written comments about the Attorney General's draft ballot title, pursuant to ORS 250.067(1). Accordingly, they are entitled to seek a different title in this court. ORS 250.085(2). We modify the ballot title in certain respects and, as modified, certify it to the Secretary of State.

At the outset, we note that the context for our discussion in this case includes our treatment of petitioners' challenges to the Attorney General's ballot titles in *Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 909 P2d 1216 (1996), and *Nakamoto v. Kulongoski*, 322 Or 181, 904 P2d 165 (1995). Elections Division #47 differs from the measure discussed in *Nakamoto* only in that it adds an explanatory "summary," and a new section 4. Apart from the text in section 4, the only difference between Elections Division #46 and #47 is that the latter contains a relating clause and the former does not.[1]

The Attorney General certified the following ballot title to the Secretary of State for Elections Division #47:

"FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

"RESULT OF 'YES' VOTE: 'Yes' vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

"RESULT OF 'NO' VOTE: 'No' vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

"SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law also provides for government

---

[1] The Appendix to this opinion contains a copy of the proposed measure. *See also Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 526, 909 P2d 1216 (1996) (Appendix) (displaying copy of Elections Division #46).

affirmative action programs to provide fair and equal opportunity in employment, public contracting, to cure past and present discrimination. Measure forbids state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Requires review of any government affirmative action program unaffected by measure every 2 years. Limits such programs to 10 years."

Pursuant to ORS 250.085(5), we review the Attorney General's certified ballot title for substantial compliance with the requirements of ORS 250.035.

Petitioners initially restate the same challenges that they made with respect to the Attorney General's certified ballot title for Elections Division #46. *See Ascher (Elections Division #46)*, 322 Or at 520-24 (discussing petitioners' challenges). Their challenges to the caption and result statements have no greater validity in the context of this measure than they had with respect to Elections Division #46. For the reasons stated in *Ascher (Elections Division #46)*, 322 Or at 520-22, we conclude that the Attorney General's certified caption and result statements comply substantially with the requirements of ORS 250.035(2)(a) to (c).

■   However, we agree with petitioners that the Attorney General's summary does not comply substantially with ORS 250.035(2)(d), because it does not inform voters that a major effect of the measure, if voters approve it, would be to limit government affirmative action programs in Oregon. *See Ascher v. Kulongoski (Elections Division #46)*, 322 Or at 522 (discussing petitioners' same challenge to the Attorney General's certified summary for Elections Division #46); *Nakamoto*, 322 Or at 188 (measure's limitation of state and local affirmative action programs is a "major effect" that the summary should state explicitly). Accordingly, we modify the Attorney General's summary to correct that deficiency.

■   Petitioners' remaining challenges relate to how the Attorney General's certified summary treats section 4 of the measure. Section 4 provides:

"(1)   Any state or local affirmative action program not affected by this amendment shall be reviewed every 2 years.

"(2) Any state or local affirmative action program not affected by this amendment shall have a sunset provision not to last longer than 10 years."

The Attorney General devotes the last two sentences of the certified summary to section 4. Those two sentences read:

"Requires review of any government affirmative action program unaffected by measure every 2 years. Limits such programs to 10 years."

Petitioners argue that the provisions of section 4 warrant no mention in the summary, because they would not have a "major effect" if voters approve the measure. *See* ORS 250.035(2)(d) (ballot title shall contain a summary describing "the measure and its major effect"). In support, they argue that, because section 1 of the measure would abolish virtually all affirmative action programs, few, if any, programs would be unaffected by the measure and thus be subject to the provisions of section 4.

For the reasons stated in *Nakamoto*, 322 Or at 186-88, we disagree with petitioners' premise that section 1 of the measure would abolish all, or almost all, state and local affirmative action programs. Moreover, the measure's operative terms

"would not abolish all forms of affirmative action which, under ORS 243.205(2) and other statutes that define the phrase, include programs aimed at ensuring equal opportunities in matters of education, employment, contracting, and the provision of public services." *Id.* at 186.

For those reasons, the reference to programs "not affected by this amendment" in section 4 is not meaningless, as petitioners contend.

Petitioners next argue that any effect section 4 might have is purely speculative, because it does not specify what programs "shall be reviewed," nor does it indicate the nature of the required "review," or who will conduct that "review." In the alternative, they argue that, if the provisions of section 4 do deserve mention in the summary, the Attorney General's description of those provisions should be shortened to permit a more complete discussion, within the 85-word limit, of the measure's other major effects.

The Attorney General responds that, in order to achieve substantial compliance with the requirements of ORS 250.035(2)(d), the summary must describe both provisions of section 4, despite any imprecision in those provisions.

We agree with petitioners that the requirement in section 4(1) that all state or local affirmative action programs "not affected by this amendment shall be reviewed every two years" does not state a major effect of the measure. The measure does not make clear, for affirmative action programs "not affected by this amendment," what is the purpose or effect of the biennial "review" of those programs. Whatever may be the precise range of programs to which Section 4(1) applies, a "review" of those programs, without more, carries no discernible legal consequence. Accordingly, we conclude that that subsection does not state a "major effect" of the measure.

■    We agree with the Attorney General, however, that the creation, for those affirmative action programs not otherwise affected by the measure, of "a sunset provision not to last longer than 10 years" is a major effect of the measure that should be described in the summary. Although the sunset provision carries a major effect, the Attorney General's summary — "[l]imits such programs to 10 years" — describes that effect inaccurately. We modify that portion of the summary to state accurately the effect of the sunset clause.

In accordance with the foregoing discussion, we modify the Attorney General's certified summary for the ballot title, with additions shown in italics and deletions shown in brackets, as follows:

> SUMMARY: Adopts statute. Oregon law now [forbids government discrimination based on race, religion, color, sex, national origin. Law also] provides for government affirmative action programs to provide fair and equal opportunity in employment *and* public contracting, to cure past and present discrimination. *Measure would limit such programs by forbidding* state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. [Requires review of any government affirmative action program unaffected by measure

every 2 years. Limits such programs to 10 years.] *Affirmative action programs that are unaffected by the measure expire automatically after 10 years unless government readopts them.*

We modify the ballot title certified to the Secretary of State by the Attorney General, and certify to the Secretary of State the following ballot title:[2]

## FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

RESULT OF "YES" VOTE: "Yes" vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

RESULT OF "NO" VOTE: "No" vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

SUMMARY: Adopts statute. Oregon law now provides for government affirmative action programs to provide fair and equal opportunity in employment and public contracting, to cure past and present discrimination. Measure would limit such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Affirmative action programs that are unaffected by the measure expire automatically after 10 years unless government readopts them.

Ballot title certified as modified. This decision takes effect as provided in ORAP 11.30(10).

---

[2] In response to the dissent, and for the reasons stated in *Ascher*, 322 Or at 524 n 4, the court takes no position on the meaning or effect of ORS 250.035(6) in this case.

# APPENDIX

### Proposed Statutory Amendment

Summary.

Repeals provisions of state law requiring, encouraging or resulting in reverse discrimination based on affirmative action, goal sand timetables, or quotas and set-asides Prohibits state and political subdivisions of the state from utilizing or compelling private citizens to utilize discrimination of preferences in education, employment, contractiong or provision or public services Transfers funding from the Affirmative Action Department to The Department of Labor, Civil Rights Division to investigate violations of this act.

### A BILL FOR AN ACT

Relating to discrimination; creating new provisions; amending
ORS240.105,240.306,240.379,284.705,285.500.285.637,461.120,656.753,659.10
0 and 776.300;and repealing ORS
182.100,243 305,243.315,279 053,341.541,352.380,659.025 and 659 027
**Be it enacted by the People of the State of Oregon:**

*Section 1*(1) Neither the state nor any of its political subdivisions shall discriminate against or grant a preference to any citizen or any group of citizens on the basis or race,religion,color,sex,or national origin in matters or education, employment, contracting, or the provision of public services.

(2) Neither the state nor any of its political subdivisions shall compel any citizen to discriminate against or grant a preference to any other citizen or group of citizens on the basis of race, religion , color, sex, or national origin in matters of education, employment, contracts, or the provision of public services.

Section 2. (1.) The Oregon Department of Labor shall establish such administrative mechanisms that are necessary to investigate complaints and penalize violations Oregon State Civil Rights Statutes.

(2) Funding for the Department of Labor, Civil Rights Division shall be increased from the transfer of the budget of the Office of Affirmative Action to the Oregon Department of Labor.

Section 3 (1) This act shall apply to actions taken by the state or political subdivisions of the state after the effective date of this act.

(2) Noting in this act shall be interpreted as prohibiting classifications based on sex or ability that are reasonably necessary to the normal operation of the state's system of public employment or public accommodations.

(3) The provisions of the act do not affect any voluntary, nongovernmental program for the recruitment to minorities, veterans or disabled persons.
(4) If any part or parts of this act are found to be in conflict with The United States Constitution, the remaining parts shall be implemented to the maximum extent permitted by The United States Constitution . Any provision held invalid shall be severable from the remaining portions of this act.

Section 4 (1) Any state or local affirmative action program not affected by this amendment shall be reviewed every 2 years.

(2)Any state or local affirmative action program not affected by this amendment shall have a sunset provision not to last longer than 10 years

**UNIS, J.,** dissenting.

I respectfully dissent on two grounds. First, I dissent for the reasons expressed in *Sizemore v. Kulongoski*, 322 Or 229, 239, 905 P2d 1146 (Unis, J., dissenting), *recon allowed* 322 Or 387, 908 P2d 825 (1995). In that decision, I stated:

> "[T]o the extent that ORS 250.085(5) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different from the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution." *Id.*

I continue to adhere to that view.

I also dissent for the reasons expressed in *Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 527, 909 P2d 1216 (1996) (Unis, J., dissenting). The majority in this case certifies a ballot title that closely resembles the ballot titles certified in *Ascher (Elections Division #46), Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 909 P2d 1228 (1996), and *Ascher v. Kulongoski (Elections Division #48 and #50)*, 322 Or 540, 910 P2d 372 (1996). While certifying ballot titles that closely resemble each other, the majority avoids any discussion concerning the impact of ORS 250.035(6) on this court's role in reviewing ballot titles and on its decision in this case. ORS 250.035(6) provides:

> "To avoid confusion, a ballot title shall not resemble any title previously filed for a measure to be submitted at that election."

For the reasons expressed in *Ascher (Elections Division #46)*, 322 Or at 527 (Unis, J., dissenting), I believe that ORS 250.035(6) raises important questions that the majority should address in this case.