Argued and submitted October 31, 1995; ballot title certified as modified
February 1, 1996

Ruth ASCHER,
Lynn R. Nakamoto, Emilio Hernandez, Jr.,
James Posey, Jann Carson,
*Petitioners,*

*v.*

Theodore KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42629)

909 P2d 1216

Scott Meyer, of Mitchell, Lang & Smith, Portland, argued the cause and filed the petition for petitioners.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DURHAM, J.

Unis, J., dissented and filed an opinion.

## DURHAM, J.

■ This is an original proceeding in which petitioners challenge the Attorney General's ballot title for a proposed initiative measure that the Secretary of State's office has designated as "Elections Division #46."[1] Petitioners are electors who, in a timely manner, submitted written comments about the Attorney General's draft ballot title, pursuant to ORS 250.067(1). Accordingly, they are entitled to seek a different title in this court. ORS 250.085(2). We modify the ballot title in certain respects and, as modified, certify it to the Secretary of State.[2]

At the outset, we note that Elections Division #46 is one of five proposed initiative measures submitted to the Secretary of State that all relate to the same general subject. The Secretary of State's office has designated the other four measures as Elections Division #47, #48, #49, and #50. Petitioners also challenge the ballot titles certified by the Attorney General for each of those measures. We decide those challenges today in *Ascher v. Kulongoski (Elections Division #47)*, 322 Or 531, 909 P2d 1223 (1996), *Ascher v. Kulongoski (Elections Division #48 and #50)*, 322 Or 540, 910 P2d 372 (1996), and *Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 909 P2d 1228 (1996).

We also note that each of the five measures closely resembles the measure for which this court certified a ballot title in *Nakamoto v. Kulongoski*, 322 Or 181, 904 P2d 165 (1995). Elections Division #46 differs from the measure discussed in *Nakamoto* in three immaterial respects: (1) it omits the relating clause; (2) it adds an explanatory "summary"; and

---

[1] The Appendix to this opinion contains a copy of the proposed measure.

[2] ORS 250.085(5) requires this court to draft and certify a new ballot title if the ballot title certified by the Attorney General does not comply substantially with ORS 250.035. In *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 25, 902 P2d 1143 (1995), this court, with two justices dissenting, held that that requirement, which was imposed by ORS 250.085(5) (1993), did not violate the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution. In *Sizemore v. Kulongoski*, 322 Or 229, 905 P2d 1146, *mod on recons* 322 Or 387, 908 P2d 825 (1995), this court applied that holding from *Rooney* in the context of a ballot title case that, like the present case, was governed by ORS 250.085(5). Under the holding in *Sizemore*, modification of the Attorney General's ballot title under ORS 250.085(5) does not violate the principle of separation of powers.

(3) it adds a heading, "Section 4(1)," without any accompanying text. *Nakamoto* guides our resolution of many of the parties' arguments in this case.[3]

The Attorney General certified the following ballot title to the Secretary of State for Elections Division #46:

"FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

"RESULT OF 'YES' VOTE:   'Yes' vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

"RESULT OF 'NO' VOTE:   'No' vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

---

[3] *Nakamoto* was decided under ORS 250.035 (1993) and *former* ORS 250.039. In 1995, the legislature amended ORS 250.035 (1993) and repealed *former* ORS 250.039. Or Laws 1995, ch 534, §§ 1, 19. Because the petition in this case was filed after the effective date of those changes, July 7, 1995, the 1995 version of the act applies. Or Laws 1995, ch 534, § 21. ORS 250.035, as amended by Oregon Laws 1995, chapter 534, section 1, provides in part:

"(2) The ballot title of any state measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words that reasonably identifies the subject matter of the state measure. The caption of an initiative or referendum amendment to the constitution shall begin with the phrase, 'Amends Constitution,' which shall not be counted for purposes of the 10-word caption limit;

"(b) A simple and understandable statement of not more than 15 words that describes the result if the state measure is approved. The statement required by this paragraph shall include either the phrase, 'I vote' or 'vote yes,' or a substantially similar phrase, which may be placed at any point within the statement;

"(c) A simple and understandable statement of not more than 15 words that describes the result if the state measure is rejected. The statement required by this paragraph shall include either the phrase, 'I vote' or 'vote no,' or a substantially similar phrase, which may be placed at any point within the statement; and

"(d) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect.

"(3) The statements required by subsection (2)(b) and (c) of this section shall be written so that, to the extent practical, the language of the two statements is parallel.

"(4) The statement required by subsection (2)(b) of this section shall be written so that an affirmative response to the statement corresponds to an affirmative vote on the state measure.

"(5) The statement required by subsection (2)(c) of this section shall be written so that an affirmative response to the statement corresponds to a negative vote on the state measure.

"(6) To avoid confusion, a ballot title shall not resemble any title previously filed for a measure to be submitted at that election."

"SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law also provides for government affirmative action programs to provide fair and equal opportunity in employment, public contracting, to cure past and present discrimination. Measure forbids state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Forbids government from compelling citizens to discriminate against, grant preference based on same factors, in education, employment, contracting, public services."

Pursuant to ORS 250.085(5), we review the Attorney General's certified ballot title for substantial compliance with the requirements of ORS 250.035. We address each segment of the ballot title separately.

## CAPTION

■  ORS 250.035(2)(a) requires that the ballot title for a state initiative measure contain a "caption of not more than 10 words that reasonably identifies the subject matter of the state measure." Petitioners argue that the Attorney General's caption fails to identify reasonably the measure's subject matter, which, according to petitioners, is the abolition of government affirmative action programs based on race, religion, sex, and national origin.

We disagree that the measure's subject matter is the abolition of government affirmative action. Like the measure at issue in *Nakamoto*, Elections Division #46 prohibits state and local governments from granting "a preference to any citizen or any group of citizens on the basis or [*sic*] race, religion, color, sex, or national origin in matters or [*sic*] education, employment, contracting, or the provision of public services." In *Nakamoto*, this court explained that the phrase "affirmative action," as defined by state law, includes *some* programs that do *not* give a "preference" to citizens based on race, religion, color, sex, or national origin. 322 Or at 186. Because the phrase "affirmative action," by definition, encompasses programs that the measure would not prohibit, it would be inaccurate for the caption to state

that the measure's subject matter is the abolition of affirmative action.

Petitioners also argue, partially in response to *Nakamoto*, that the measure at least aims to *limit* affirmative action programs by state and local governments and that the caption must say so. We understand petitioners to contend by this alternative argument that the caption must state in terms that the measure curtails "affirmative action."

We reject petitioners' contention. The Attorney General's ballot title accurately reflects the measure's subject matter and, in doing so, uses the measure's own terms. By contrast, the phrase "affirmative action" does not appear in the measure's operative terms. We can agree that the phrase "affirmative action" addresses an aspect of the measure's operation. However, petitioners' preference for that phrase does not demonstrate that the Attorney General's choice of different terms, which appear in the measure, to describe the measure's subject matter fails to comply substantially with ORS 250.035(2)(a). We conclude that the Attorney General's caption complies substantially with ORS 250.035(2)(a).

## RESULT STATEMENTS

ORS 250.035(2)(b) requires that the ballot title contain a "simple and understandable statement of not more than 15 words that describes the result if the state measure is approved." ORS 250.035(2)(c) requires a corresponding statement describing the result if the measure is rejected. We refer to those requirements as "result statements."

Petitioners argue that the Attorney General's result statements do not comply substantially with ORS 250.035(2)(b) and (c), because they fail to communicate to voters that the result of a "yes" (or "no") vote would be to approve (or reject) the adoption of a statute that would abolish, or at least limit, government affirmative action programs in Oregon.

Petitioners do not argue that the Attorney General's result statements are otherwise inaccurate, or that

they violate the requirement that the result statements be "simple and understandable." ORS 250.035(2)(b) and (c). Although we agree with petitioners that one "result" of the measure, if voters approve it, would be to limit affirmative action programs by state and local governments, we reject petitioners' contention that the Attorney General's result statements do not comply substantially with ORS 250.035(2)(b) and (c). The Attorney General permissibly chose to incorporate the wording of the measure ("government preferences") in those statements, rather than to describe the result of approval or rejection of the measure in terms of the measure's impact on "affirmative action." We conclude that the Attorney General's result statements comply substantially with ORS 250.085(2)(b) and (c).

## SUMMARY

■ ORS 250.035(2)(d) requires that the ballot title contain a "concise and impartial statement of not more than 85 words summarizing the measure and its major effect." Petitioners argue that the Attorney General's summary fails to comply substantially with ORS 250.035(2)(d), because it does not disclose that the measure would abolish, or at least limit, government affirmative action programs in Oregon. The state concedes that, in the light of *Nakamoto*, this court should modify the summary to inform voters expressly that the measure would limit affirmative action programs by state and local governments. *See Nakamoto*, 322 Or at 188 (summary should state expressly that measure would limit affirmative action programs). We agree with the state's concession and, accordingly, we modify the Attorney General's certified summary to state explicitly that major effect of the measure.

■ Petitioners next argue that the Attorney General's summary is deficient, because it fails to disclose that the measure would repeal all statutes that require affirmative action. We disagree that the measure effectively would repeal all state statutes requiring affirmative action. Nothing in the text of the proposed measure repeals expressly, or by necessary implication, all existing state statutes that require affirmative action. Although the measure contains an explanatory "summary" that refers generally to the

repeal of unspecified provisions of state law, a ballot measure's heading or explanatory notes cannot supply express provisions that are not in the measure's text. *See* ORS 174.540 (statute section headings and explanatory notes "do not constitute any part of the law"); *Nakamoto*, 322 Or at 188-89 ("a ballot measure's relating clause cannot supply a substantive provision that is not a part of the measure's text").

■     Finally, petitioners argue that the Attorney General's summary is deficient, because it fails to disclose that the measure would prohibit state and local affirmative action programs needed to qualify for federal funds. They argue that loss of federal funds is a "major effect" of the measure that the summary must disclose.

Petitioners do not identify the state or local government affirmative action programs that are needed for federal funding and that the measure nonetheless would prohibit. In addition, they do not estimate the amount of funds that Oregon governmental and private entities would lose if federal funding is cut off due to approval of the measure.

We recognize that estimating that figure is not a simple task and that the inquiry calls for some degree of speculation. However, we cannot gauge the magnitude of the effect of the measure's approval without some basis for estimating the amount of federal funding to Oregon that would be cut off, as petitioners claim. Even if we could make that determination, we also would be compelled to foretell the extent to which federal, state, and local lawmakers would attempt to make up the shortfall with other funds. That inquiry also would require this court to engage in speculation. In contrast, the Attorney General has chosen to disclose in the summary those major effects of the measure that are discernible without an exercise in pure conjecture. We see no reason to disturb that choice.

In accordance with the foregoing discussion, we modify the Attorney General's certified summary for the ballot title, with changes shown in italics and deletions shown in brackets, as follows:

SUMMARY: Adopts statute. Oregon law now [forbids government discrimination based on race, religion, color, sex, national origin. Law also] provides for government affirmative action programs to provide fair and equal opportunity in employment *and* public contracting, to cure past and present discrimination. *Measure would limit such programs by forbidding* state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Forbids government from compelling citizens to discriminate against *or* grant preference based on same factors, in education, employment, contracting, public services.

## CONCLUSION

■ We modify the ballot title certified to the Secretary of State by the Attorney General, and we certify to the Secretary of State the following ballot title:[4]

## FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

RESULT OF "YES" VOTE: "Yes" vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

RESULT OF "NO" VOTE: "No" vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

SUMMARY: Adopts statute. Oregon law now provides for government affirmative action programs to provide fair and equal opportunity in employment and public

---

[4] The dissent argues that the court must decide whether ORS 250.035(6) forbids certification of this ballot title, because it resembles the ballot titles that we also certify today for the related measures in the companion cases. Petitioners do not make that claim here. Moreover, petitioners made no such objection to the draft ballot title in their written comments to the Secretary of State under ORS 250.067(1). ORS 250.085(6) directs this court "not [to] consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067." The prohibition in ORS 250.085(6) applies here and undermines the dissent's argument that ORS 250.035(6) bars certification of a ballot title whether or not a party makes an "unlawful resemblance" argument to the court. *See also Mannix v. Keisling,* 317 Or 598, 602 n 3, 858 P2d 1306 (1993) (court declined to determine whether ballot titles satisfied the readability requirement in *former* ORS 250.039, because the petitioners failed to argue that the ballot titles violated that statute). Accordingly, this court takes no position on the meaning or effect of ORS 250.035(6) in this case.

contracting, to cure past and present discrimination. Measure would limit such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Forbids government from compelling citizens to discriminate against or grant preference based on same factors, in education, employment, contracting, public services.

Ballot title certified as modified. This decision takes effect as provided in ORAP 11.30(10).

# APPENDIX

### Proposed Statutory Amendment

#### Summary

Repeals provisions of state law requiring, encouraging or resulting in reverse discrimination based on affirmative action, goal sand timetables, or quotas and set-asides. Prohibits state and political subdivisions of the state from utilizing or compelling private citizens to utilize discrimination of preferences in education, employment, contractiong or provision or public services. Transfers funding from the Affirmative Action Department to The Department of Labor, Civil Rights Division to investigate violations of this act

### A BILL FOR AN ACT
#### Be it enacted by the People of the State of Oregon:

*Section 1*(1) Neither the state nor any of its political subdivisions shall discriminate against or grant a preference to any citizen or any group of citizens on the basis or race,religion,color,sex,or national origin in matters or education, employment, contracting, or the provision of public services.

(2) Neither the state nor any of its political subdivisions shall compel any citizen to discriminate against or grant a preference to any other citizen or group of citizens on the basis of race, religion , color, sex, or national origin in matters of education, employment, contracts, or the provision of public services.

Section 2. (1.) The Oregon Department of Labor shall establish such administrative mechanisms that are necessary to investigate complaints and penalize violations Oregon State Civil Rights Statutes.

(2) Funding for the Department of Labor, Civil Rights Division shall be increased from the transfer of the budget of the Office of Affirmative Action to the Oregon Department of Labor.

Section 3 (1) This act shall apply to actions taken by the state or political subdivisions of the state after the effective date of this act.

(2) Noting in this act shall be interpreted as prohibiting classifications based on sex or ability that are reasonably necessary to the normal operation of the state's system of public employment or public accommodations.

(3) The provisions of the act do not affect any voluntary, nongovernmental program for the recruitment to minorities, veterans or disabled persons.

(4) If any part or parts of this act are found to be in conflict with The United States Constitution, the remaining parts shall be implemented to the maximum extent permitted by The United States Constitution . Any provision held invalid shall be severable from the remaining portions of this act.

Section 4. (1)

**UNIS, J.,** dissenting.

After my dissenting opinion in *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995), I have filed dissenting opinions in all subsequent cases in which this court has drafted and certified a ballot title that is different from the one prepared by the Attorney General. In each of those opinions, I have said:

"[T]o the extent that ORS 250.085(5) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different from the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution." *See, e.g., Sizemore v. Kulongoski*, 322 Or 229, 239, 905 P2d 1146 (Unis, J., dissenting), *recon allowed* 322 Or 387, 908 P2d 825 (1995).

I continue to adhere to that view.

There is an additional reason why I disagree with the majority's decision. The majority in this case certifies a ballot title that closely resembles the ballot title certified in *Ascher v. Kulongoski (Elections Division #47)*, 322 Or 531, 909 P2d 1223 (1996).[1] While certifying two ballot titles that closely resemble each other, the majority avoids any discussion concerning the impact of ORS 250.035(6) on this court's role in reviewing ballot titles and on its decision in this case. ORS 250.035(6) provides:

---

[1] The ballot title certified by the court in this case "resembles" not only the ballot title certified in *Ascher (Elections Division #47)*, but also the ballot titles certified in *Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 909 P2d 1228 (1996), and *Ascher v. Kulongoski (Elections Division #48 and #50)*, 322 Or 540, 910 P2d 372 (1996). In *Ascher (Elections Division #48 and #50)*, the majority certifies two ballot titles that are *identical*.

In all of the "*Ascher* cases," the certified ballot titles have the same caption and the same "yes/no" result statements. The *only* difference in these cases is that the final two sentences of the summary in *Ascher (Elections Division #46)*, the final sentence of the summaries in *Ascher (Elections Division #47)* and *Ascher (Elections Division #48 and #50)*, and the first and last sentences in *Ascher (Elections Division #49)* are worded slightly differently.

I note also that the ballot title certified in this case may resemble the ballot title certified in *Nakamoto v. Kulongoski*, 322 Or 181, 904 P2d 165 (1995). The ballot titles in both of these cases have identical captions and substantially similar summaries.

"To avoid confusion, a ballot title *shall not resemble any title previously filed* for a measure to be submitted at that election." (Emphasis added.)

I believe that ORS 250.035(6) raises important questions that the majority should address.[2]

For instance, does ORS 250.035(6), as a literal reading of its text suggests, prohibit this court from certifying two or more ballot titles that resemble each other? If so, what should this court do when the Attorney General drafts two or more ballot titles that resemble each other? Which ballot title should the court certify? How does the court determine which ballot title was "previously filed"?

If ORS 250.035(6) requires that this court certify only the "previously filed" ballot title, does that statute violate the right of the people, guaranteed by the Oregon Constitution, to initiate laws and amendments? *See* Or Const, Art IV, § 1(2)(a).[3]

ORS 250.035(6) was enacted by the 1995 legislature to replace *former* ORS 250.035(2), which provided:

"The ballot title shall not resemble, *so far as probably to create confusion*, any title previously filed for a measure to be submitted at that election." (Emphasis added.)

In *Rooney (Elections Division #13)*, a case in which I filed a dissenting opinion, this court interpreted *former* ORS 250.035(2). In that case, a majority of this court held that a ballot title could resemble a previously-filed title *if* the resemblance between the titles *probably* would not create confusion. *Id.* at 22-23. According to the *Rooney* decision,

---

[2] The majority avoids any discussion concerning the impact of ORS 250.035(6) on this case, holding that that issue was not raised by petitioners. *Ascher (Elections Division #46)*, 322 Or at 524 n 4. That holding ignores this court's statutory mandate under ORS 250.085(5), which provides that the Oregon Supreme Court "*shall* review [a ballot] title *for substantial compliance with the requirements of ORS 250.035*, and *shall certify a title meeting this standard* to the Secretary of State." (Emphasis added.) That statute is in the form of a directive to this court — using the imperative "shall." In light of that directive, this court, before certifying a ballot title, *must* ensure its substantial compliance with *each* of the requirements of ORS 250.035, including ORS 250.035(6).

[3] Article IV, section 1(2)(a), of the Oregon Constitution provides in part:

"The people reserve to themselves the initiative power, which is to propose law and amendments to the Constitution[.]"

the court had some discretion under *former* ORS 250.035(2) in determining whether the existence of two or more ballot titles that resembled each other might create confusion among petition signers and voters. The text of the 1995 statute, however, is significantly different; it states, *"to avoid confusion,* a ballot title *shall not* resemble any title previously filed." ORS 250.035(6) (emphasis added). The majority fails to consider whether that significant change in statutory language has any impact on the court's role in reviewing ballot titles and on its decision in this case.

The legislative history of ORS 250.035(6) makes it clear that the 1995 legislature, at least, was aware of the many problems connected with the filing of multiple ballot titles for initiative measures. At a public hearing of the Senate Legislative Rules Committee concerning the enactment of ORS 250.035(6), David Fidanque of the American Civil Liberties Union testified:

> "I * * * want[] to bring one issue to your attention that I wasn't sure whether you had considered, which is the seemingly increasing practice of people 'shopping' for ballot titles. And probably the best example I can give you is the latest version of [a public policy group's] initiatives. I believe seven different versions of that initiative were filed with the Secretary of State's office on the same day this year. And the ballot title for each of those is being challenged in the Oregon Supreme Court. And we would suggest just deleting the language from the current [1993] statute[.]" Tape recording, Senate Legislative Rules Committee, May 1, 1995, Tape 59B at 330-70.

The majority fails to consider whether the 1995 legislature enacted ORS 250.035(6) in response to those concerns in order to prevent the filing of multiple ballot titles during one election period.

It is arguable that ORS 250.035(6) does not prohibit this court from certifying ballot titles that resemble each other. Instead, perhaps the statute requires that the Attorney General draft different ballot titles for initiative measures that resemble each other. If that was the intent of the statute, however, how does the Attorney General draft different ballot titles for identical or similar initiative measures? Would the existence of different ballot titles for the

same or similar initiative measures confuse petition signers and voters who read those titles? Was not ORS 250.035(6) enacted by the 1995 legislature to avoid such confusion?

In summary, ORS 250.035(6) raises important questions that directly impact the court's decision in this case. I believe that this court should not avoid addressing the legislature's intent in enacting that statute.