Argued and submitted October 31, 1995, ballot title certified as modified
February 1, 1996

Ruth ASCHER,
Lynn R. Nakamoto, Emilio Hernandez, Jr.,
James Posey, Jann Carson,
*Petitioners,*

*v.*

Theodore KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42631; SC S42633)
(Consolidated for Opinion Only)

910 P2d 372

Scott Meyer, of Mitchell, Lang & Smith, Portland, argued the cause and filed the petition for petitioners.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DURHAM, J.

Unis, J., dissented and filed an opinion.

## DURHAM, J.

This is an original proceeding in which petitioners challenge the Attorney General's ballot title for two initiative measures that the Secretary of State's office has designated as "Elections Division #48" and "#50." Those measures are identical in every respect. The Attorney General certified the same ballot title for both measures. Because petitioners present the same challenge to the Attorney General's ballot title for both measures, we address that challenge in one opinion.

Petitioners are electors who, in a timely manner, submitted written comments about the Attorney General's draft ballot title, pursuant to ORS 250.067(1). Accordingly, they are entitled to seek a different ballot title for the two measures in this court. ORS 250.085(2). We modify the ballot title in certain respects and, as modified, certify it to the Secretary of State.

At the outset, we note that the context for our discussion in this case includes our treatment of petitioners' challenges to the Attorney General's ballot titles in *Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 909 P2d 1216 (1996), and *Nakamoto v. Kulongoski*, 322 Or 181, 904 P2d 165 (1995). Elections Division #48 and #50 are identical to the measure discussed in *Nakamoto*, except that they add an explanatory "summary," and a new section 4. Apart from the text contained in section 4, the only difference between the measures in this case and the measure discussed in *Ascher (Elections Division #46)* is that the former contains a relating clause and the latter does not.[1]

The Attorney General certified the following ballot title for both measures to the Secretary of State:

"FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

"RESULT OF 'YES' VOTE: 'Yes' vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

---

[1] The Appendix to this opinion contains a copy of the proposed measures. *See also Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 526, 909 P2d 1216 (1996) (Appendix) (displaying copy of Elections Division #46).

"RESULT OF 'NO' VOTE: 'No' vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

"SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law also provides for government affirmative action programs to provide fair and equal opportunity in employment, public contracting, to cure past and present discrimination. Measure forbids state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Any unaffected government affirmative action program must show government has history of discrimination. Unaffected state programs implemented under strict scrutiny."

■ Pursuant to ORS 250.085(5), we review the Attorney General's certified ballot title for substantial compliance with the requirements of ORS 250.035.

■ Petitioners initially restate the same challenges that they made with respect to the Attorney General's certified ballot title for Elections Division #46. *See Ascher (Elections Division #46)*, 322 Or at 520-24 (discussing petitioners' challenges). Their challenges to the caption and result statements have no greater validity in the context of Elections Division #48 and #50 than they had with respect to Elections Division #46. For the reasons stated in *Ascher (Elections Division #46)*, 322 Or at 520-22, we conclude that the Attorney General's certified caption and result statements comply substantially with the requirements of ORS 250.035(2)(a) to (c). In addition, we conclude, as we did in *Ascher (Elections Division #46)*, 322 Or at 522, that the Attorney General's summary does not comply substantially with ORS 250.035-(2)(d), because it does not inform voters that a "major effect" of the measures, if voters approve them, would be to limit government affirmative action programs in Oregon. Accordingly, we modify the Attorney General's summary, in the manner described in *Ascher (Elections Division #46)*, to correct that deficiency.

Petitioners' remaining challenges relate to how the Attorney General's certified summary treats section 4 of the measures. Section 4 in each measure provides:

"(1)  Any state affirmative action programs not affected by this amendment shall be implemented by a standard of strict scrutiny.

"(2)  any [*sic*] state or local affirmative action programs not affected by this amendment shall have to prove that the effected [*sic*] benefactor has had a specific history of past disrimination [*sic*]."

█    Petitioners argue that those provisions warrant no mention in the summary, because they would not have a "major effect" if voters approve the measures. *See* ORS 250.035(2)(d) (ballot title shall contain a summary describing "the measure and its major effect"). In support, petitioners contend that section 4 pertains only to state and local affirmative action programs that otherwise are "not affected" by the measure and that, because section 1 of the measure would abolish most, if not all, state and local government affirmative action in Oregon, section 4 would affect few, if any, programs. In *Nakamoto*, 322 Or at 186-88, we rejected that contention, and we again reject it here for the same reasons. *See Ascher v. Kulongoski (Elections Division #47)*, 322 Or 531, 535, 909 P2d 1223 (1996) (rejecting similar contention).

Petitioners next argue that section 4(1) would not have a "major effect" if voters approve the measure, because that provision merely codifies existing law. In support, petitioners argue that, under *Richmond v. J.A. Croson Co.*, 488 US 469, 109 S Ct 706, 102 L Ed 2d 854 (1989), all state and local government affirmative action programs already must satisfy a standard of "strict scrutiny."

██    We reject petitioners' argument, because its premise is faulty. Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution,[2] a standard of "strict scrutiny" applies to legislation directed at a "suspect class" of citizens. *Kadrmas v. Dickinson Pub. Schools*, 487 US 450, 457, 108 S Ct 2481, 101 L Ed 2d 399 (1988). However, not all affirmative action programs in Oregon are targeted at a "suspect class" of citizens. ORS 243.305(2) defines the phrase "affirmative action" to mean

---

[2] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides in part: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

"a method of eliminating the effects of past and present discrimination, intended or unintended, on the basis of race, religion, national origin, age, sex, *marital status or physical or mental disabilities.*" (Emphasis added.)

The Supreme Court of the United States has not designated marital status or physical or mental disability as classifications that are inherently "suspect." Nevertheless, section 4 requires that affirmative action programs that otherwise are unaffected by the measure, such as a program aimed at eliminating discrimination based on any of those characteristics, "shall be implemented by a standard of strict scrutiny." Application of a "strict scrutiny" standard to legislative programs that do not target a "suspect class" of citizens would constitute a change in the law. We therefore agree with the Attorney General that section 4(1) of the measures would have a "major effect," if either measure is approved, and that ORS 250.035(2)(d) requires some mention of that effect in the summary. The Attorney General's description of that provision complies substantially with the requirements of ORS 250.035(2)(d).

In the light of the foregoing discussion, we modify the Attorney General's summary, with additions shown in italics and deletions shown in brackets, as follows:

SUMMARY: Adopts statute. Oregon law now [forbids government discrimination based on race, religion, color, sex, national origin. Law also] provides for government affirmative action programs to provide fair and equal opportunity in employment *and* public contracting, to cure past and present discrimination. *Measure would limit such programs by forbidding* state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Any unaffected government affirmative action program must show government has history of discrimination. Unaffected state programs implemented under strict scrutiny.

We modify the ballot title certified to the Secretary of State by the Attorney General, and we certify to the Secretary of State the following ballot title:[3]

---

[3] In response to the dissent, and for the reasons stated in *Ascher*, 322 Or at 524 n 4, the court takes no position on the meaning or effect of ORS 250.035(6) in this case.

## FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

RESULT OF "YES" VOTE:   "Yes" vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

RESULT OF "NO" VOTE:   "No" vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

SUMMARY:   Adopts statute. Oregon law now provides for government affirmative action programs to provide fair and equal opportunity in employment and public contracting, to cure past and present discrimination. Measure would limit such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Any unaffected government affirmative action program must show government has history of discrimination. Unaffected state programs implemented under strict scrutiny.

Ballot title certified as modified. This decision takes effect as provided in ORAP 11.30(10).

# APPENDIX
# ELECTIONS DIVISION #48

**Proposed Statutory Amendment**

Summary

Repeals provisions of state law requiring, encouraging or resulting in reverse discrimination based on affirmative action, goal sand timetables, or quotas and set-asides. Prohibits state and political subdivisions of the state from utilizing or compelling private citizens to utilize discrimination of preferences in education, employment, contractiong or provision or public services. Transfers funding from the Affirmative Action Department to . The Department of Labor, Civil Rights Division to investigate violations of this act.

### A BILL FOR AN ACT

Relating to discrimination; creating new provisions; amending ORS240.105,240.306,240.379,284.705,285.500.285.637,461.120,656.753,659.10 0 and 776.300;and repealing ORS 182.100,243.305,243.315,279.053,341.541,352.380,659.025 and 659.027

**Be it enacted by the People of the State of Oregon:**

_Section 1_(1) Neither the state nor any of its political subdivisions shall discriminate against or grant a preference to any citizen or any group of citizens on the basis or race,religion,color,sex,or national origin in matters or education, employment, contracting, or the provision of public services.

(2) Neither the state nor any of its political subdivisions shall compel any citizen to discriminate against or grant a preference to any other citizen or group of citizens on the basis of race, religion , color, sex, or national origin in matters of education, employment, contracts, or the provision of public services.

Section 2. (1.) The Oregon Department of Labor shall establish such administrative mechanisms that are necessary to investigate complaints and penalize violations Oregon State Civil Rights Statutes.

(2) Funding for the Department of Labor, Civil Rights Division shall be increased from the transfer of the budget of the Office of Affirmative Action to the Oregon Department of Labor.

Section 3 (1) This act shall apply to actions taken by the state or political subdivisions of the state after the effective date of this act.

(2) Noting in this act shall be interpreted as prohibiting classifications based on sex or ability that are reasonably necessary to the normal operation of the state's system of public employment or public accommodations.

(3) The provisions of the act do not affect any voluntary, nongovernmental program for the recruitment to minorities, veterans or disabled persons.

(4) If any part or parts of this act are found to be in conflict with The United States Constitution, the remaining parts shall be implemented to the maximum extent permitted by The United States Constitution . Any provision held invalid shall be severable from the remaining portions of this act.

Section 4. (1)Any state affirmative action programs not affected by this amendment shall be implemented by a standard of strict scrutiny.

(2) any state or local affirmative action programs not affected by this amendment shall have to prove that the effected benefactor has had a specific history of past disrimination.

# APPENDIX
# ELECTIONS DIVISION #50

### Summary

Repeals provisions of state law requiring, encouraging or resulting in reverse discrimination based on affirmative action, goal sand timetables, or quotas and set-asides. Prohibits state and political subdivisions of the state from utilizing or compelling private citizens to utilize discrimination of preferences in education, employment, contractiong or provision or public services. Transfers funding from the Affirmative Action Department to The Department of Labor, Civil Rights Division to investigate violations of this act.

### A BILL FOR AN ACT

Relating to discrimination; creating new provisions; amending
ORS240.105,240.306,240.379,284.705,285.500.285 637,461.120,656.753,659.10 0 and 776.300;and repealing ORS
182.100,243.305,243.315,279.053,341.541,352.380,659.025 and 659.027
**Be it enacted by the People of the State of Oregon:**

*Section 1*(1) Neither the state nor any of its political subdivisions shall discriminate against or grant a preference to any citizen or any group of citizens on the basis or race,religion,color,sex,or national origin in matters or education, employment, contracting, or the provision of public services.

(2) Neither the state nor any of its political subdivisions shall compel any citizen to discriminate against or grant a preference to any other citizen or group of citizens on the basis of race, religion , color, sex, or national origin in matters of education, employment, contracts, or the provision of public services.

Section 2. (1.) The Oregon Department of Labor shall establish such administrative mechanisms that are necessary to investigate complaints and penalize violations Oregon State Civil Rights Statutes

(2) Funding for the Department of Labor, Civil Rights Division shall be increased from the transfer of the budget of the Office of Affirmative Action to the Oregon Department of Labor.

Section 3 (1) This act shall apply to actions taken by the state or political subdivisions of the state after the effective date of this act.

(2) Noting in this act shall be interpreted as prohibiting classifications based on sex or ability that are reasonably necessary to the normal operation of the state's system of public employment or public accommodations.

(3) The provisions of the act do not affect any voluntary, nongovernmental program for the recruitment to minorities, veterans or disabled persons.

(4) If any part or parts of this act are found to be in conflict with The United States Constitution, the remaining parts shall be implemented to the maximum extent permitted by The United States Constitution . Any provision held invalid shall be severable from the remaining portions of this act.

Section 4. (1)Any state affirmative action programs not affected by this amendment shall be implemented by a standard of strict scrutiny.

(2) any state or local affirmative action programs not affected by this amendment shall have to prove that the effected benefactor has had a specific history of past disrimination.

**UNIS, J.,** dissenting.

I respectfully dissent on two grounds. First, I dissent for the reasons expressed in *Sizemore v. Kulongoski*, 322 Or 229, 239, 905 P2d 1146 (Unis, J., dissenting), *recon allowed* 322 Or 387, 908 P2d 825 (1995). In that decision, I stated:

"[T]o the extent that ORS 250.085(5) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different from the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution." *Id.*

I continue to adhere to that view.

I also dissent for the reasons expressed in *Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 527, 909 P2d 1216 (1996) (Unis, J., dissenting). The majority in this case certifies a ballot title that closely resembles the ballot titles certified in *Ascher (Elections Division #46), Ascher v. Kulongoski (Elections Division #47)*, 322 Or 531, 909 P2d 1223 (1996), and *Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 909 P2d 1228 (1996). While certifying ballot titles that closely resemble each other, the majority avoids any discussion concerning the impact of ORS 250.035(6) on this court's role in reviewing ballot titles and on its decision in this case. ORS 250.035(6) provides:

"To avoid confusion, a ballot title shall not resemble any title previously filed for a measure to be submitted at that election."

For the reasons expressed in *Ascher (Elections Division #46)*, 322 Or at 527 (Unis, J., dissenting), I believe that ORS 250.035(6) raises important questions that the majority should address.

A discussion concerning the impact of ORS 250.035(6) on this court's role in certifying ballot titles is particularly important in this case because the court certifies the same ballot title (Elections Division #48 and #50) for two initiative measures. The ballot titles certified by the court in this case not only "resemble" each other; they are identical.