Argued and submitted July 25, ballot title certified as modified October 5, 1995

Bruce ADAMS
and Robert Crumpton,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42356)

902 P2d 1191

Monica A. Smith, of Smith, Gamson, Diamond & Olney, Portland, argued the cause for petitioners on review. With her on the brief was Paul B. Gamson.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

VAN HOOMISSEN, J.

Unis, J., dissented and filed an opinion.

## VAN HOOMISSEN, J.

Petitioners challenge a ballot title for a proposed initiative measure certified by the Attorney General to the Secretary of State. ORS 250.085 (1993).[1] Petitioners had filed with the Secretary of State written comments regarding the Attorney General's draft ballot title and, thus, are entitled to bring this proceeding. *See* ORS 250.067(1) (right to submit written comments); ORS 250.085(6) (1993) (court does not consider arguments not presented to Secretary of State as written comments).

■ We review the certified ballot title for substantial compliance with ORS 250.035 (1993) and *former* ORS 250.039.[2] ORS 250.085(5) (1993). For the reasons that follow, we modify the ballot title, and certify it as modified to the Secretary of State.

---

[1] ORS 250.085 (1993) provided in part:

"(2) Any elector dissatisfied with a ballot title for an initiated or referred measure certified by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. The petition shall state the reasons the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035 and 250.039.

"* * * * *

"(5) The court shall review the title for substantial compliance with the requirements of ORS 250.035 and 250.039, and shall certify a title meeting this standard to the Secretary of State.

"(6) When reviewing a title prepared by the Attorney General, the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

ORS 250.085(5) (1993) requires this court to draft and certify a new ballot title if the ballot title certified by the Attorney General does not comply substantially with ORS 250.035 and ORS 250.039. In *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 902 P2d 1143 (1995), this court, with two justices dissenting, held that that requirement does not violate the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution.

[2] The 1995 legislature made significant amendments to ORS 250.035 and repealed ORS 250.039. Or Laws 1995, ch 534, §§ 1, 19. Those changes, however, do not apply to the ballot title in this case. *See* Or Laws 1995, ch 534, § 20 (provisions of act apply to initiative and referendum petitions for which a prospective petition is filed on or after effective date of act). Because the prospective petition in this case was filed before July 7, 1995, the effective date of the act, the earlier version of the law applies.

The Attorney General has certified the following ballot title:

"AMENDS CONSTITUTION:
LIMITS PROPERTY TAXES, FORBIDS
REPLACEMENT FEES WITHOUT VOTE

"QUESTION: Shall constitution limit 1997-98 property taxes and future increases, forbid replacing lost revenue with fees, other charges unless voters approve?

"SUMMARY: Amends constitution. Limits 1997-98 property taxes to lesser of: 1995-96 tax minus 15 percent, or 1994-95 tax. Limits future annual increases to 3 percent, with exceptions. Legislature must spread revenue cuts among local governments to equalize impact on citizens, prioritize public safety, and minimize loss of local control. Public safety budget cuts cannot exceed 1/4 of total cuts. Restricts new bonds to capital construction, public safety vehicles, some fixtures. Forbids replacing property taxes with other charges, except state income tax, unless voters approve. Other changes."

Petitioners submitted comments claiming that the Attorney General's draft Caption, Question, and Summary were insufficient in various respects. Petitioners suggested alternative language. The Attorney General rejected petitioners' suggestions. Petitioners petitioned this court for review.

Petitioners assert that the Attorney General's ballot title is underinclusive, because it focuses on how much money can be raised through property taxes but fails to adequately address who decides how the tax money can be spent. Petitioners propose the following alternative ballot title:

"LIMITS PROPERTY TAXES,
LEGISLATURE ALLOCATES REVENUE
LOSSES AMONG LOCAL GOVERNMENTS.

"QUESTION: Shall Constitution limit property taxes, reduce local control over expenditure of property taxes, prohibit replacement fees, charges without voter approval?

"SUMMARY: Amends Constitution. Sets 1997-98 property taxes at lower of: 1994-95 tax, or 15 percent below 1995-96 tax. Limits annual increases to 3 percent. Limits revenue available for schools, other local services funded by property taxes. Lost revenue can be replaced only from state income tax, unless voters approve replacement fees,

charges. State Legislature, not local voters, decides how to spread revenue cuts among local governments. For each $1 cut from safety services, $3 must be cut from non-safety services. Restricts new bonds."

The Attorney General responds that the Caption of the certified ballot title complies substantially with ORS 250.035 (1993). The Attorney General agrees that modifications to the Question and Summary may be needed, but proposes modifications that are somewhat different from those proposed by petitioners.

*The Caption.*

ORS 250.035(1)(a) (1993) provided that the ballot title of any measure to be initiated or referred shall consist of:

"A caption of not more than 10 words which reasonably identifies the subject of the measure[.]"

Petitioners argue that, although the general subject of the ballot title in question here is property taxes, the Attorney General's title is too narrow. Petitioners assert that the Caption should inform the voters that the measure would entail a significant loss of local control and that the Attorney General's Caption fails in that regard. The Attorney General responds that this court should not consider petitioners' argument on this point because of the provision of ORS 250.085(6) (1993) that the court "shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State," except under specific circumstances not present in this case.

■ It is true that the Caption suggested by petitioners to the Secretary of State was not worded identically to the caption petitioners presently suggest to this court. Rather than the words "Legislature Allocates Revenue Losses Among Local Governments," petitioners suggested to the Secretary of State the words "Reduces Local Control over Expenditures." Although the suggested words were not identical, petitioners' arguments against the Attorney General's caption — that it failed to inform voters that the initiative would shift control of revenue expenditures away from local government and to the legislature — is the same. We conclude that petitioners sufficiently raised the issue during the comment process. ORS 250.085(6) (1993).

On the merits, the Attorney General responds that, although petitioners' suggested phrase does reflect an important aspect of the measure, adopting this phrase would require the deletion of two other crucial phrases pertaining to the fact that the initiative measure would amend the constitution and that it would forbid replacing lost tax revenues with other fees without voter approval.

■ We conclude that the Attorney General's Caption "reasonably identif[ies] the subject of the measure — a property tax limitation. ORS 250.035(1)(a) (1993).

*The Question.*

ORS 250.035(1)(b) (1993) provided that a ballot title shall consist of:

> "A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure[.]"

Petitioners argue that the chief purpose of the measure is more than simply to limit how much property tax is collected; it places significant restrictions on how taxes may be spent and gives the legislature control over spending. Petitioners argue that the Attorney General's Question focuses narrowly on the amount of property taxes allowed, thus excluding mention of the other aspects of the measure's chief purpose. Petitioners suggest the following alternative Question:

> "Shall Constitution limit property taxes, reduce local control over expenditure of property taxes, prohibit replacement fees, charges without voter approval?"

The Attorney General agrees that it is proper to frame the Question in such a manner as to include information about how the measure would strengthen state control over local government spending. The Attorney General argues, however, that petitioners' "local control" phrasing is not sufficiently specific and, instead, suggests that the Question be changed to read:

> "Shall constitution limit property taxes; forbid replacement fees, charges unless voters approve; require legislature to spread cuts among local governments?"

■    We agree with the parties that the issue of the legislature's role is part of the "chief purpose" of the measure and that its exclusion from the Question prevents voters from learning about that aspect of the measure. The present Question, therefore, is not in substantial compliance with ORS 250.035(1)(b) (1993).

We next turn to a determination of the appropriate wording to be used in the Question. The relevant portion of the initiative provides:

> "Whereas any reduction in ad valorem property taxes enacted by subsections (1) and (7) of this section may have varying effects on taxing districts throughout the state, the state legislature by appropriate legislation shall provide a mechanism for allocating revenue reductions among local government entities so as to (i) prioritize public safety budgets (ii) minimize any loss of local control of cities and counties to state government, and (iii) equalize the impact on the citizenry; except that in the event any reductions are made to public safety budgets as a result of this Act, for every dollar public safety budgets are reduced, not less than three dollars shall be cut elsewhere."

That wording requires the legislature to do more than "spread cuts among local governments," as the Attorney General's alternative ballot title suggests. On the other hand, petitioners' suggested wording is, as the Attorney General correctly argues, too generic. It also may be somewhat misleading in that it emphasizes the loss of "local control," yet the subsection it describes could fairly be said to direct the legislature to minimize loss of local control.

We conclude that the Question should be modified as follows:

> "Shall Constitution limit property taxes; forbid replacement fees, charges unless voters approve; give legislature control over allocation to local governments?"

*The Summary*

ORS 250.035(1)(c) (1993) provided that a ballot title shall consist of:

> "A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

Petitioners assert that the Attorney General's Summary is insufficient to inform voters of the breadth of the measure's impact. *See Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989) (Summary should "be worded so that voters will understand the breadth of its impact"). In particular, petitioners point out that the Summary does not state that the measure would cause local government entities to lose funding. Petitioners also argue that the Attorney General's Summary fails adequately to cover another major effect — that of creating a shift, such as that created by the passage of Ballot Measure 5 in 1990, of the financial burden of schools and other operations currently funded by local property taxes to the state General Fund.

Regarding petitioner's first point, the Attorney General responds that the Summary already implicitly tells voters that the measure would limit local government revenues: (a) in the second sentence, where it states that property taxes would be reduced; (b) in the third sentence, where it states that future property taxes would be limited; (c) in the fourth sentence, which specifically mentions "revenue cuts among local governments"; and (d) in the fifth sentence, where both "budget cuts" and "total cuts" are mentioned.

On petitioners' second point, the Attorney General agrees that the Summary should be altered to make it clearer to voters that the measure could shift the financial burden of schools and other operations currently funded by local property taxes to the state General Fund. The Attorney General suggests, therefore, as an alternative, that the Summary be modified to delete:

"Restricts new bonds to capital construction, public safety vehicles, some fixtures. Forbids replacing property taxes with other charges, except state income tax, unless voters approve. Other changes."

The Attorney General proposes that the following be substituted in its place:

"Restricts new bonds. Local government lost revenue may be replaced only with state income tax unless voters approve replacement fees or other charges. Other changes."

We agree with petitioners that the phrase "to * * * prioritize public safety, and minimize loss of local control"

does little to describe any "major effect" of the measure and may be deleted. The Attorney General concedes that those provisions may merely be precatory and unenforceable. That concession appears to be well taken and, given the concession, it would be anomalous to describe those provisions as having any "major effect" to be described in the Summary. Regarding petitioners' proposed substitute language, the Attorney General is correct that the limitations on local government revenues can be inferred from other statements in the Summary. However, because those limitations are undoubtedly a major effect of this measure, we agree with petitioners that this point should be made explicit in the Summary.

In regard to petitioners' second concern, we believe that the Attorney General's alternative wording adequately addresses the issue of the shift of the financial burden of various operations currently funded by local property taxes to the state General Fund.

Accordingly, we certify the following ballot title to the Secretary of State:

AMENDS CONSTITUTION:
LIMITS PROPERTY TAXES, FORBIDS
REPLACEMENT FEES WITHOUT VOTE

QUESTION: Shall Constitution limit property taxes; forbid replacement fees, charges unless voters approve; give legislature control over allocation to local governments?

SUMMARY: Amends constitution. Limits 1997-98 property taxes to lesser of: 1995-96 tax minus 15 percent, or 1994-95 tax. Limits future annual increases to 3 percent, with exceptions. Legislature must spread revenue cuts among local governments to equalize impact. Limits revenue available for schools, other local services funded by property taxes. Public safety budget cuts cannot exceed 1/4 of total cuts. Restricts new bonds. Local governments' lost revenue may be replaced only with state income tax unless voters approve replacement fees or other charges. Other changes.

Ballot title certified as modified. This decision shall go into effect in accordance with ORAP 11.30(9).

**UNIS, J.,** dissenting.

I adhere to my view that, to the extent that ORS 250.085(5) (1993) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different than the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution. *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting). I would, therefore, dismiss this case for lack of jurisdiction.