Argued and submitted October 31, 1995, ballot title certified as modified February 1, petition for reconsideration allowed by opinion February 8, 1996

See 322 Or 614, 911 P2d 934 (1996)

Ruth ASCHER,
Lynn R. Nakamoto, Emilio Hernandez, Jr.,
James Posey, Jann Carson,
*Petitioners,*

*v.*

Theodore KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42632)

909 P2d 1228

Scott Meyer, of Mitchell, Lang & Smith, Portland, argued the cause and filed the petition for petitioners.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DURHAM, J.

Unis, J., dissented and filed an opinion.

## DURHAM, J.

This is an original proceeding in which petitioners challenge the Attorney General's ballot title for an initiative measure that the Secretary of State's office has designated as "Elections Division #49." Petitioners are electors who, in a timely manner, submitted written comments about the Attorney General's draft ballot title, pursuant to ORS 250.067(1). Accordingly, they are entitled to seek a different ballot title for the measure in this court. ORS 250.085(2). We modify the ballot title in certain respects and, as modified, certify it to the Secretary of State.

At the outset, we note that the context for our discussion in this case includes our treatment, in *Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 909 P2d 1216 (1996), of the challenge to the ballot title for the initiative measure designated as Elections Division #46 by the Secretary of State, as well as our treatment of the challenge to the ballot title for the measure in *Nakamoto v. Kulongoski*, 322 Or 181, 904 P2d 165 (1995). Elections Division #49 is identical to the measure at issue in *Nakamoto*, except that it adds an explanatory "summary" and a new section 4. Apart from the text contained in section 4, the only difference between Elections Division #49 and #46 is that the former contains a relating clause and the latter does not.[1]

The Attorney General certified the following ballot title to the Secretary of State for this measure:

"FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

"RESULT OF 'YES' VOTE: 'Yes' vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

"RESULT OF 'NO' VOTE: 'No' vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

"SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law also provides for government

---

[1] The Appendix to this opinion contains a copy of the proposed measure. *See also Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 526, 909 P2d 1216 (1996) (Appendix) (displaying copy of Elections Division #46).

affirmative action programs to provide fair and equal opportunity in employment, public contracting, to cure past and present discrimination. Measure forbids state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. 'Person from a disadvantaged group' defined as economically disadvantaged regardless of race, creed, religion, color, sex, national origin, sexual preference."

Pursuant to ORS 250.085(5), we review the Attorney General's certified ballot title for substantial compliance with the requirements of ORS 250.035.

Petitioners initially restate the same challenges that they made with respect to the Attorney General's certified ballot title for Elections Division #46. *See Ascher (Elections Division #46)*, 322 Or at 520-24 (discussing petitioners' challenges). Their challenges to the caption and result statements have no greater validity in the context of Elections Division #49 than they had with respect to Elections Division #46. For the reasons stated in *Ascher (Elections Division #46)*, 322 Or at 520-22, we conclude that the Attorney General's certified caption and result statements substantially comply with the requirements of ORS 250.035(2)(a) to (c).

In addition, we conclude, as we did in *Ascher (Elections Division #46)*, 322 Or at 522, that the Attorney General's summary does not comply substantially with ORS 250.035(2)(d), because it does not inform voters that a "major effect" of the measure, if voters approve it, would be to limit government affirmative action programs in Oregon. Accordingly, we modify the Attorney General's summary, in the manner described in *Ascher (Elections Division #46)*, to correct that deficiency.

Petitioners' remaining challenges relate to how the Attorney General's certified summary treats section 4 of the measure. Section 4 provides:

"(1) The definition of person from a disadvantaged group as defined in the Oregon Revised Statutes shall redefined [*sic*] as economicaly [*sic*] disadvanted [*sic*] only without regard to race, creed, religion, color, sex, national origin or sexual preference."

ORS 240.035(2)(d) requires the summary of a ballot title to summarize the measure and its "major effect." Petitioners argue that the summary should not refer to section 4, because it would have no effect if the measure were approved. In support, they observe — correctly — that the Oregon Revised Statutes do not, at present, define the phrase "person from a disadvantaged group." They argue that, because section 4 purports to "redefine" a phrase for which there is no definition in the Oregon Revised Statutes, section 4 cannot be read plausibly to have any legal effect.

The Attorney General asserts that section 4 plausibly may be read to refer to ORS 279.053(1). ORS 279.053 provides:

"(1) No provision contained in chapter 771, Oregon Laws 1975, shall be construed to prohibit any public contracting body from engaging in bidding and contracting practices designed to accomplish affirmative action goals for *disadvantaged* or minority *groups*.

"(2) In carrying out the policy of affirmative action, by appropriate ordinance, resolution or administrative rule, a public contracting body may limit competitive bidding on any public contract for procurement of goods and services or on any other public contract estimated to cost $50,000 or less to contracting entities owned or controlled by *persons described in subsection (3) of this section*.

"(3) As used in this section 'affirmative action' is a program designed to insure equal opportunity in employment and business for *persons otherwise disadvantaged by reason of race, color, religion, sex, national origin*, age or physical or mental disability." (Emphasis added.)

Relying on *Aughenbaugh v. Roberts*, 309 Or 510, 516, 789 P2d 656 (1990), the Attorney General argues that it at least would be premature for this court to decide that section 4 does not apply to ORS 279.053(1), and that, because it might so apply, mention of that possible "effect" in the summary is appropriate. We interpret that argument to assert that the measure will have the described effect on ORS 279.053(1) because, under ORS 250.035(2)(d), the ballot title summary must describe the *actual* major effect of the measure, not a merely hypothetical or possible effect

■ Initially, we consider the premise that underlies petitioners' argument — that, if a provision of a ballot title cannot be read plausibly to have a legal effect, the Attorney General does not comply substantially with ORS 250.035-(2)(d) if the summary refers to the provision. The function of the summary is to inform voters "what will happen if the measure is approved" and to help voters "understand the breadth of its impact." *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989). We agree with petitioners that, if a provision of a proposed initiative measure has no legal effect, a reference to the provision in the summary would not advance the summary's purpose. Moreover, reference in the summary to a meaningless provision in the ballot title could mislead voters by suggesting that the provision may have some effect when, in fact, it will not.[2]

■ We next consider whether section 4 has some legal effect. While doing so, we keep in mind the general rule of statutory construction that, when possible, legislative enactments should be construed to give effect to each provision thereof. *See* ORS 174.010 (so stating).

Section 4 purports to "redefine" the phrase "person from a disadvantaged group." We harbor a concern that the term "redefined" in the measure contains a typographical error and that the drafter of the measure may have intended to use instead the words "be defined." Neither party addresses that potential problem. We have no occasion, in the

---

[2] Two recent decisions from this court illustrate that point. In *Adams v. Kulongoski*, 322 Or 122, 902 P2d 1191 (1995), the petitioners challenged the Attorney General's reference in the summary of a ballot title to provisions of an initiative measure that required the legislature to "provide a mechanism for allocating revenue reductions among local government entities so as to * * * prioritize public safety budgets * * * [and] minimize any loss of local control of cities and counties to state government[.]" The Attorney General conceded that those provisions might merely be precatory and unenforceable. *Id.* at 130. This court stated that the Attorney General's concession appeared to be well taken and concluded that, in light of that concession, "it would be anomalous to describe those provisions as having any 'major effect' to be described in the summary." *Id.*

In *Bartsch v. Kulongoski*, 322 Or 335, 339, 906 P2d 815 (1995), this court concluded that two phrases in the measure, "independent legal technicians" and "independent paralegals," conveyed a sense of weighty legal significance that was false and misleading because those phrases had "no established meaning in the law." Because those phrases lacked "any independent significance outside the measure itself," 322 Or at 340, this court agreed with the Attorney General that they referred, in fact, to "any person." *Id.*

context of this challenge to the ballot title, to resolve that question because, whether the measure "defines" or "redefines" the phrase in question, approval of the measure will insert the new definition into the Oregon Revised Statutes.

As we noted above, the phrase that the measure would define (or redefine), "person from a disadvantaged group," presently is not defined in the Oregon Revised Statutes and is not used in the ballot measure itself. However, the key terms in that phrase appear, in some form, in ORS 279.053. Subsection (3) defines "affirmative action," for purposes of the section, as a program designed to assist *"persons otherwise disadvantaged* by reason of race, color, religion, sex, national origin, age or physical or mental disability." (Emphasis added.) Subsection (1) refers to *"disadvantaged* or minority *groups."* (Emphasis added.) The statute does not expressly define "disadvantaged groups" but, in context, that phrase refers clearly to groups of "persons otherwise disadvantaged" by the factors listed in subsection (3). Subsection (2) entitles a public contracting body to carry out a policy of affirmative action by limiting bidding on certain public contracts to entities "owned or controlled by *persons specified in subsection (3) of this section."* (Emphasis added.)

We are mindful that the use in a statute of a term or phrase that differs from a term or phrase that is statutorily defined often signifies that the lawmaker did not intend the statutory definition to apply. However, our analysis of ORS 279.053 discloses that section 4 of the measure is designed to create a special definition for a group of terms, "person from a disadvantaged group," that appear in the statutory definition of "affirmative action," and thereby alter that definition. In the context of ORS 279.053, the phrase "person from a disadvantaged group," in section 4 refers to a person to whom an "affirmative action" program lawfully may apply. Section 4, if adopted, would limit the definition of "affirmative action" in ORS 279.053(3), and thereby restrict the application of affirmative action policies of public contracting entities. That is a significant legal change. Accordingly, we reject petitioners' contention that section 4 is meaningless, simply because the terms that it would define do not

appear *as a phrase* in that section or in ORS 279.053.[3] The Attorney General did not err in referring to section 4 in the summary.

■     Finally, petitioners contend that the Attorney General's reference to section 4 in the summary merely reiterates section 4 and fails to identify the major effect of that section. We agree. Merely restating the new statutory definition in the summary does nothing to convey to the voters, in the words of *Fred Meyer, Inc.*, 308 Or at 175, "what will happen if the measure is approved." In that respect, the Attorney General's summary does not comply substantially with ORS 250.035-(2)(d). We modify the Attorney General's summary to convey the major effect, and not merely the terms, of section 4 of the measure.

In accordance with the foregoing discussion, we modify the Attorney General's certified summary for the ballot title, with additions shown in italics and deletions shown in brackets, as follows:

"SUMMARY:   Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law [also] provides [for] government affirmative action programs to *give* [provide fair and] equal opportunity in employment, public contracting, to cure *unlawful* [past and present] discrimination. *Measure would limit such programs by forbidding* state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. ['Person from a disadvantaged group' defined as economically disadvantaged regardless of race, creed, religion, color, sex, national origin, sexual preference.] *Affirmative action would protect only persons who are economically disadvantaged, regardless of race, creed, religion, color, sex, national origin, sexual preference.*"

We modify the ballot title certified to the Secretary of State by the Attorney General, and we certify to the Secretary of State the following ballot title:[4]

---

[3] We do not decide whether the definition in section 4 of the measure also would affect other statutes that use somewhat similar phrases, such as "disadvantaged and minority groups," ORS 200.025(4)(c) and ORS 285.637(6), and "economically disadvantaged individual," ORS 200.005(1), (2), and ORS 774.040(1).

[4] In response to the dissent, and for the reasons stated in *Ascher*, 322 Or at 524 n 4, the court takes no position on the meaning or effect of ORS 250.035(6) in this case.

## FORBIDS GOVERNMENT PREFERENCES BASED ON RACE, RELIGION, SEX, NATIONAL ORIGIN

RESULT OF "YES" VOTE: "Yes" vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

RESULT OF "NO" VOTE: "No" vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law provides government affirmative action programs to give equal opportunity in employment, public contracting, to cure unlawful discrimination. Measure would limit such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Affirmative action would protect only persons who are economically disadvantaged, regardless of race, creed, religion, color, sex, national origin, sexual preference."

Ballot title certified as modified. This decision takes effect as provided in ORAP 11.30(10).

# APPENDIX

Summary

Repeals provisions of state law requiring, encouraging or resulting in reverse discrimination based on affirmative action, goal sand timetables, or quotas and set-asides. Prohibits state and political subdivisions of the state from utilizing or compelling private citizens to utilize discrimination of preferences in education, employment, contractiong or provision or public services. Transfers funding from the Affirmative Action Department to The Department of Labor, Civil Rights Division to investigate violations of this act.

### A BILL FOR AN ACT

Relating to discrimination; creating new provisions; amending ORS240.105,240.306,240.379,284.705,285.500.285.637,461.120,656.753,659.100 and 776.300;and repealing ORS 182.100,243.305,243.315,279.053,341.541,352.380,659.025 and 659.027
**Be it enacted by the People of the State of Oregon:**

*Section 1*(1) Neither the state nor any of its political subdivisions shall discriminate against or grant a preference to any citizen or any group of citizens on the basis or race,religion,color,sex,or national origin in matters or education, employment, contracting, or the provision of public services.

(2) Neither the state nor any of its political subdivisions shall compel any citizen to discriminate against or grant a preference to any other citizen or group of citizens on the basis of race, religion , color, sex, or national origin in matters of education, employment, contracts, or the provision of public services.

Section 2. (1.) The Oregon Department of Labor shall establish such administrative mechanisms that are necessary to investigate complaints and penalize violations Oregon State Civil Rights Statutes.

(2) Funding for the Department of Labor, Civil Rights Division shall be increased from the transfer of the budget of the Office of Affirmative Action to the Oregon Department of Labor.

Section 3 (1) This act shall apply to actions taken by the state or political subdivisions of the state after the effective date of this act.

(2) Noting in this act shall be interpreted as prohibiting classifications based on sex or ability that are reasonably necessary to the normal operation of the state's system of public employment or public accommodations.

(3) The provisions of the act do not affect any voluntary, nongovernmental program for the recruitment to minorities, veterans or disabled persons.

(4) If any part or parts of this act are found to be in conflict with The United States Constitution, the remaining parts shall be implemented to the maximum extent permitted by The United States Constitution . Any provision held invalid shall be severable from the remaining portions of this act.

Section 4. (1)The definition of person from a disadvantaged group as defined in The Oregon Revised Statutes shall redefined as economicaly disadvanted only without regard to race,creed, religion,color,sex,national origin or sexual preference.

**UNIS, J.,** dissenting.

I respectfully dissent on two grounds. First, I dissent for the reasons expressed in *Sizemore v. Kulongoski*, 322 Or 229, 239, 905 P2d 1146 (Unis, J., dissenting), *recon allowed* 322 Or 387, 908 P2d 825 (1995). In that decision, I stated:

> "[T]o the extent that ORS 250.085(5) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different from the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution." *Id.*

I continue to adhere to that view.

I also dissent for the reasons expressed in *Ascher v. Kulongoski (Elections Division #46)*, 322 Or 516, 527, 909 P2d 1216 (1996) (Unis, J., dissenting). The majority in this case certifies a ballot title that closely resembles the ballot titles certified in *Ascher (Elections Division #46), Ascher v. Kulongoski (Elections Division #47)*, 322 Or 531, 909 P2d 1223 (1996), and *Ascher v. Kulongoski (Elections Division #48 and #50)*, 322 Or 540, 910 P2d 372 (1996). While certifying ballot titles that closely resemble each other, the majority avoids any discussion concerning the impact of ORS 250.035(6) on this court's role in reviewing ballot titles and on its decision in this case. ORS 250.035(6) provides:

> "To avoid confusion, a ballot title shall not resemble any title previously filed for a measure to be submitted at that election."

For the reasons expressed in *Ascher (Elections Division #46)*, 322 Or at 527 (Unis, J., dissenting), I believe that ORS 250.035(6) raises important questions that the majority should address in this case.